**COL–TEX REFINING CO.**

v.

**COFFIELD & GUTHRIE, Inc.**

**No. 3064.**

Court of Civil Appeals of Texas. Eastland.

Jan. 22, 1954.

Rehearing Denied Feb. 12, 1954.

—◆—

Black & Stayton, Austin, for appellant.

Weeks & Hankerson, Tyler, Eldon B. Mahon, Colorado City, for appellee.

LONG, Justice.

Appellant, Col-Tex Refining Company, at all times material herein, owned and operated an oil refinery at Colorado City, Texas. Appellee, Coffield & Guthrie, Inc., at such times owned and operated a common carrier pipe line that served oil fields in the vicinity of said refinery. On August 8, 1947, appellant and appellee entered into a written contract under which appellee was obligated to sell and appellant was obligated to buy crude oil produced in certain fields. Appellee agreed to purchase crude oil from these fields and transport such oil to a point known as Westbrook Station where it was delivered to appellant at an agreed price equal to the price paid therefor by appellee plus 12½¢ per barrel. The written contract of August 8, 1947 is as follows:

"Whereas, Coffield & Guthrie, Inc., a corporation, with its principal office and place of business at Rockdale, Texas, is the owner of gathering lines and pipe lines in the fields hereinafter mentioned, and owns production, and has under contract production from the Sharon Ridge oil field in Scurry County, Texas, and in North Mitchell County, Texas, and in the Coleman pool in Mitchell County, Texas, and has been selling such oils to Col-Tex Refining Company, a corporation whose principal office and place of business is in Oklahoma City, Oklahoma, and their present arrangement terminates on December 1, 1947, and said parties are desirous of making contract to continue the sale of said oils from and after December 1, 1947.

"I.

"Now Therefore, Coffield & Guthrie, Inc., here now promises, contracts and agrees to gather, transport and deliver from said Sharon Ridge Oil Field in Scurry and Mitchell Counties, Texas, and said Coleman pool in Mitchell County, Texas, through its gathering system and transportation lines, any and all crude oil which said Coffield & Guthrie, Inc., has under contract, or which it may hereafter obtain under contract, and any extension of said contracts, and is able to gather or procure from said fields and said areas, all of which crude oil shall be delivered by said Coffield & Guthrie, Inc., to said Col-Tex Refining Company at its Westbrook Station in Mitchell County, Texas. Said Coffield & Guthrie, Inc., promise and agree to exercise reasonable diligence in purchasing and procuring said oil and in transporting and delivering same, and it agrees to deliver all of the oil it can procure in said fields.

"It is understood that most of the production in the Coleman pool field is farmed out, and that other parties have the right to possibly demand a portion of said oils and thus prevent Coffield & Guthrie, Inc., from procuring same. Now, it is understood and agreed that in the event a considerable portion of the production from said Coleman pool should be withheld from Coffield & Guthrie, Inc., and to such extent that it would not be profitable for it to operate its gathering lines and transportation lines from said pool, then and in such event, at its option it shall be relieved from delivering said oils from said Coleman pool.

"II.

"Said Col-Tex Refining Company here now promises, contracts and agrees to take, and it here now purchases each and all of the crude oil so produced, transported and delivered to it by said Coffield & Guthrie, Inc., as aforesaid, and promises and agrees to pay to said Coffield & Guthrie, Inc., at Rockdale, Texas, the price posted by Coffield & Guthrie, Inc., which price shall be based on average posted price by any three of the major Companies for like grades of crude oil in the area in which it is received on the day on which it is received by said Col-Tex Refining Company, plus twelve and one-half cents per barrel. Payments shall be made monthly on or before the 15th of each month for the oils delivered during the preceding month. Payment shall be based on grade and quality of oil based on computation of quantities (including all corrections, adjustments and deductions) in accordance with the then current existing rules and regulations of the Railroad Commission of Texas. B. S. & W. content of such oils shall not exceed two percent.

"Said Col-Tex Refining Company further agrees to at all times furnish ample storage tanks and facilities at its Westbrook Station, to receive the oils tendered it hereunder.

"III.

"Coffield & Guthrie, Inc., here now warrants title to each and all of the oil delivered by it hereunder. The title to such oil shall remain in Coffield & Guthrie, Inc., until delivered in the Col-Tex Refining Company's tanks, at which time the title shall pass to said Col-Tex Refining Company. Said Col-Tex Refining Company shall have no control nor right to control, nor right to exercise any authority over the manner of gathering, transporting or delivering any of said oils, but all of the same shall be under the exclusive control and management of Coffield & Guthrie, Inc.

"IV.

"This contract shall cover a period of three years, beginning Dec. 1, 1947, and ending Nov. 30, 1950. But at its option either party shall have the right and privilege of renewing this contract for an additional three years upon the same terms and conditions as herein specified for the first three years. Should either party elect to exercise such option and extend the contract for such additional three years, it shall give the other party written notice of such intention by registered mail addressed to it at its present Post Office address at least ninety (90) days before the expiration of this contract.

"For the faithful performance of this obligation each party hereto binds itself, its successors and legal representatives forever.

"Executed in duplicate originals this 8 day of Aug., 1947."

The above contract was for a three-year period beginning December 1, 1947 and ending November 30, 1950, with an option that either party might renew the contract on the same terms for an additional three years. This option was timely exercised by Coffield & Guthrie, Inc., and the extended contract expired November 30, 1953.

This suit was brought by appellant against appellee for an injunction restraining appellee from delivering into appellant's tank crude oil which appellant contended was not covered by the contract of August 8, 1947. Appellant also sought to declare the contract of August 8, 1947 at an end for the reason that appellee has breached the same by placing in appellant's tanks oil not covered by the contract. Appellee filed a cross-action to recover the contract price of crude oil delivered by appellee to appellant under the terms of the contract for which appellant had not paid. Upon a trial before the court without a jury, appellee recovered judgment

against appellant for $276,779.56, on appellee's cross-action. From this judgment Col-Tex Refining Company has appealed.

The controlling point presented to us on this appeal is the proper interpretation to be given the contract of August 8, 1947. It is the contention of appellant that the contract obligates it to buy crude oil produced in three fields: the Sharon Ridge 1,700-foot field, the Sharon Ridge 2,400-foot field and the Coleman field. Appellee contends that the contract obligates the appellant to purchase oil produced in these fields and also in the Sharon Ridge 2,900-foot field, the Sharon Ridge Clearfork field, the Diamond "M" San Andres field, the Diamond "M" Clearfork field, the Gartner field and the Eiland Ellenberger field. The fields last mentioned had not been discovered at the time the parties entered into the contract in question.

The trial court held that the contract of August 8, 1947 was valid and binding on both parties and would expire by its terms on December 1, 1953. The court further found as follows:

"Under this contract cross-plaintiff (appellee) has delivered oil to plaintiff (appellant) from four different depths in the Sharon Ridge Field, from Coleman Ranch, and from the Diamond 'M' and Diamond 'M' Clearfork fields, during the life of this contract. These deliveries were without any protest from plaintiff as to the source of said oil until May of 1951. The court finds the source producing said oil to be that covered by the contract as same was intended by the parties and as said contract was construed by them in their dealings for approximately three years without objection from either. Plaintiff (appellant) was advised as to the source of said oil, each month, before delivery, by the Railroad commission tenders which were delivered to its refinery office; and plaintiff (appellant) settled for said oil each month knowing its source and without protest. The contract, by express language, covers not only the

Sharon Ridge Field but fields in that 'area'; and the construction is here placed on the term 'area' as including all of the sands and fields from which oil was delivered and for which oil was tendered."

We are of the opinion that the contract is not ambiguous upon its face. The contract provided that Coffield & Guthrie agreed to gather, transport and deliver from the Sharon Ridge field in Scurry and Mitchell County, Texas, and Coleman Field in Mitchell County, any and all crude which said Coffield & Guthrie had under contract *or which it may hereafter obtain under contract and any extension of said contract and is able to gather or procure from said fields and said area.* (Emphasis ours.) We believe the language of the contract, when properly construed, covers not only the Sharon Ridge field but fields in that vicinity and that by the use of the words "in this area" the parties intended to embrace in the contract oil being produced at that time from the depths and fields therein named and also oil that might thereafter be discovered in the vicinity of said fields mentioned in the contract.

However, if it should be held that the contract is ambiguous, the parties, by the construction placed on the contract, made definite what was meant by "from said fields and said area." In other words, they construed these terms to mean other fields which were thereafter discovered in the same vicinity of the ones which were in existence at the time the contract was originally made.

The evidence is ample to support the findings of the trial court. There is evidence that appellee delivered to appellant oil from the fields which appellant now contends were not covered by the contract without any protest from appellant as to the source of said oil until May, 1951. At the time of each delivery of oil to appellant, there was delivered to its refinery a tender required by the Railroad Commission which contained a statement of the fields from which the oil was produced.

These tenders disclosed that part of the oil was coming from fields which appellant now contends were not covered by the contract. These tenders were sent by the refinery to the main office of Col-Tex in Oklahoma City and from the information contained therein, checks were issued to appellee in payment for the oil. It will thus be seen that the parties placed a practical construction on the contract. Under the construction given the contract by the parties themselves, it covered not only the fields specifically named therein but fields in the same area that were brought in thereafter.

"Where the parties to an instrument in writing have by their acts and conduct placed a construction upon the same, showing the intention of the parties executing the same, then such acts and conduct should be given strong weight by the courts in arriving at the intention of the parties in the execution of the instrument, and, in the absence of clear language in such instrument indicating an intention to the contrary of the parties as expressed by their acts and conduct, the courts should adopt the construction of such instrument as placed upon it by the parties thereto." 14 Tex.Jur., pages 924, 925.

We approve the holding of the trial court and its findings as to the facts and we are of the opinion that the judgment is correct. The following authorities support our conclusion: Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W. 2d 504, 508; Superior Oil Co. v. Stanolind Oil & Gas Co., Tex.Sup., 240 S.W.2d 281, 284; Livingston Oil Corp. v. Waggoner, Tex.Civ.App., 273 S.W. 903 (Writ Ref.); Humble Oil & Refining Co. v. Reclamation Co., Tex.Civ.App., 58 S.W.2d 1082 (Writ Ref.).

■ Appellant makes the further contention that the finding of the trial court that appellant had notice of the source of all oil delivered or tendered for delivery is not supported by the evidence. In other words, appellant contends that even though it is shown that the oil from these fields was delivered to its Westbrook Station and that at such time tenders were delivered showing the source of the oil, that it is not shown that the vice president of the company and the man in charge of its affairs knew that oil was being delivered from these fields. We cannot agree with this contention. We believe the evidence is sufficient to support the finding of the trial court that Col-Tex had notice of the source of the oil. The tenders delivered to the refinery contained this information. These tenders were sent by the employees of Col-Tex to its main office in Oklahoma City. Based upon this information, payment was made to Coffield & Guthrie, Inc., for the oil runs. Furthermore, the amount of oil delivered by appellee to appellant had increased to such an extent and was so much greater than it was at the inception of the contract that we believe that this alone is sufficient to bring to the attention of those in charge of Col-Tex that oil was being delivered to it from fields which were not in existence at the time the contract was made. The contract provides that the title to the oil vested in Col-Tex when it was delivered in its tanks at Westbrook Station. The employees of Col-Tex charged with the duty of receiving such oil had the implied authority to refuse to accept any oil tendered not covered by the contract. The employees of Col-Tex who had authority to pay for the oil delivered at its Westbrook Station had the implied authority to refuse to pay for any oil not covered by the contract. We hold that notice to the employees in charge of these operations as to the source of the oil delivered was notice to Col-Tex. We believe the judgment is correct and should be affirmed.

The judgment is affirmed.