**TIDE WATER ASSOCIATED OIL COMPANY, Appellant,**

**v.**

**Bascom GILES et al., Appellees.**

**No. 10282.**

Court of Civil Appeals of Texas. Austin.

March 2, 1955.

Rehearing Denied March 6, 1955.

Y. P. Broome, Tulsa, Okl., R. O. Koch, Houston, Powell, Wirtz, Rauhut & McGinnis, William A. Brown, Austin, for appellant.

John Ben Shepperd, Atty. Gen., Thomas Black, Asst. Atty. Gen., for appellee.

GRAY, Justice.

This appeal is from a summary judgment in favor of appellees. The parties agree that no fact issues are involved.

Appellant sued the Commissioner of the General Land Office, the State Treasurer, the State Comptroller and the Attorney General, in their official capacities, to recover money paid under protest to avoid forfeiture of mineral leases. The payment is now held in a suspense account by the Treasurer.

Appellees answered and among other defenses interposed a plea to the jurisdiction of the court.

The trial court rendered judgment that appellees' motion for summary judgment be granted and that appellant take nothing by its suit, and further that all relief be denied appellant and that the cause be dismissed.

The facts out of which this litigation grew are: In July 1931, M. D. Bryant filed his application to lease, for oil and gas, 102 acres of land in Rusk County asserting that said land was vacant and unsurveyed. In July 1933, H. H. Groneman made a similar application to lease another tract of 44.278

acres in Rusk County. It appears that beginning in 1931, or even prior thereto and after that time, the two tracts of land were developed for oil and several producing wells were drilled thereon by various operators. In 1935 the State of Texas filed its suit against numerous parties seeking to recover the two tracts as vacant land. Appellant was a party defendant to that suit but in a capacity other than as involved here. Also Bryant and Groneman were made parties and they filed their cross actions. On July 31, 1939, the State recovered judgment in the district court adjudging the two tracts to be vacant land which judgment also awarded payments for oil produced therefrom. This judgment was affirmed. Humble Oil & Refining Co. v. State, Tex.Civ. App., 162 S.W.2d 119, error refused. This cause will be later referred to as Humble v. State.

On October 26, 1937, the State issued to Bryant and Groneman oil, gas and mineral leases pursuant to the application filed by those parties above referred to. The leases each provided for a cash bonus of $2 per acre, a royalty of ⅛th of the oil and gas produced plus an additional sum of $100 per acre to be paid out of the remaining ⅞ths of the first oil produced from the leased area. The $2 per acre bonus and the ⅛th royalties called for in the leases appear to have been paid and are not in dispute here.

Subsequent to the trial court's judgment in Humble v. State, supra, appellant by purchases and assignments acquired 4.32 acres out of the lease to Bryant and 31.36 acres out of the lease to Groneman. These purchases and assignments were made effective as of March 1, 1939, and were duly filed in the General Land Office.

The Commissioner of the General Land Office concluded that the $100 per acre oil payments provided for in the original leases had not been paid and that as to the 4.32 acre and 31.36 acre tracts the same with interest were due. Appellant was so notified, payment was demanded and notice was given that if the payment was not made action would be taken to forfeit the leases. The payment as demanded was made to the

Commissioner on January 31, 1953, under protest, the payment was delivered into the suspense account where it is now held, and this suit was filed seeking its refund, appellant alleging the payment was not due and owing but that it was demanded, collected and is retained without lawful authority.

■ It is the contention of appellant that the $100 oil payment specified in the leases was stipulated, adjudicated and paid in Humble v. State, supra, and that "the prior judgment is res judicata of satisfaction of the oil payment."

In order for us to determine whether this is a suit against the State it is necessary for us to construe the judgment in Humble v. State, supra.

When appellant filed its transfers and assignments from Bryant and Groneman in the General Land Office it became substituted for them and "assume[d] all the obligations, pains and penalties that the law imposed upon the original permittee or lessee." Art. 5349c, Vernon's Ann.Civ.St. If in fact the $100 per acre oil payment was not paid then appellant is liable therefor. The parties do not disagree as to this statement but differ as to the matters adjudicated in Humble v. State, supra.

In Humble v. State, supra, the parties stipulated in the trial court with reference to the amount of oil that had been produced, the dates, prices received, drilling and operation costs etc. as a basis for judgment in the event the land was adjudged to be vacant. Bryant and Groneman and the State made a further stipulation by which they agreed that:

"(1) The amount of recovery awarded the plaintiff should be a sum equal to the value of eight-eighths of the oil produced from wells drilled upon the area so recovered by the State which was produced prior to the date that the application for survey to lease was filed in the County Surveyor's Office with respect to said area and one-eighth (⅛) of the value of such oil produced after the filing of such respective applica-

294

tions. In determining the value of the oil produced, the values as set forth in the several stipulations already introduced in evidence, shall be employed by deducting from the gross value the gross production taxes paid thereon, and by adding thereto interest at the rate of six percent (6%) per annum from the end of each calendar year (but not compounded) down to the date of the judgment herein. There shall not be deducted from the amount recovered by the State any drilling or operating costs.

"(2) The amount of recovery awarded the cross-acting defendants shall be a sum equal to seven eighths (⅞ths) of the value of the oil produced from and after the date of the filing of the respective applications for survey to lease. The value of said oil shall be determined in the same manner as provided for in paragraph (1) above. There shall be deducted from the value so arrived at the costs of drilling and operating said wells, as set forth in the respective stipulations on file herein. For the purpose of computing interest upon the amount recovered by the cross-acting defendants it is understood and agreed that the first production the value of which is awarded to the cross-acting defendants shall be offset by drilling costs and operating expenses theretofore incurred, and that no interest will be allowed such cross-acting defendants except upon any net balance at the end of each calendar year after deducting all prior drilling costs and operating expenses."

The judgment awarded the State title and possession of the two tracts of land subject to the leases of Bryant and Groneman, and awarded the State, Bryant and Groneman recoveries against the operating defendants calculated upon the above stipulation. This judgment appears to have been paid and satisfied by all defendants in the judgment.

That judgment adjudged the State to be the owner of the two tracts of land and as

such owner that it was entitled to recover ⅞ths of the oil produced up to the time of the filing of applications to lease by Bryant and Groneman and ⅛th of such oil thereafter. The judgment does not charge the ⅞ths recovery by Bryant and Groneman with the $100 per acre oil payment. In fact this matter is not disposed of in either the stipulations filed, the judgment or the opinion in Humble v. State, supra.

When the trial court came to enter judgment on the stipulations filed he was bound to enter such judgment as was strictly within the stipulations. Edwards v. Gifford, 137 Tex. 559, 155 S.W.2d 786. Wyss v. Bookman, Tex.Com.App., 235 S.W. 567. Since the stipulations made no reference to the $100 per acre oil payment the judgment cannot be extended to include such payment.

It is our opinion that the $100 per acre oil payments have not been paid, that the same are, and at all times pertinent here were, due and owing, and that by Art. 5350, Vernon's Ann.Civ.St., the Commissioner of the General Land Office was authorized to demand payment of the same and in the event such payments were not made he was authorized to declare the leases forfeited.

Clearly then this is a suit against the State and unless the State has given its consent the suit cannot be maintained. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837. Short v. W. T. Carter & Brother, 133 Tex. 202, 126 S.W.2d 953.

Art. 7057b, Vernon's Ann.Civ.St., is generally referred to as the suspense statute. This statute authorizes the types of payments therein enumerated to be paid under protest and when so paid suits for the recovery of the payments are authorized. Speaking of this statute in Cobb v. Harrington, supra, the Court said [144 Tex. 360, 190 S.W.2d 714]:

"It applies in general to any occupation, gross receipt, franchise, license or privilege tax or fee required to be paid

to any state official and authorizes suit in any court of competent jurisdiction in Travis County."

The leasing of the two tracts of land for the production of oil and gas must be construed as a sale. Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655. Theisen v. Robison, 117 Tex. 489, 8 S.W.2d 646. For this reason it is our opinion that the oil payments in question represent part of the purchase price or consideration for such sale and hence do not come within the provisions of Art. 7057b, supra.

Art. 4388, Vernon's Ann.Civ.St., provides in part:

"The State Treasurer shall receive daily from the head of each Department, each of whom is specifically charged with the duty of making same daily, a detailed list of all persons remitting money the status of which is undetermined or which is awaiting the time when it can finally be taken into the Treasury, together with the actual remittances which the Treasurer shall cash and place in his vaults or in legally authorized depository banks, if the necessity arises. The report from the General Land Office shall include all money for interest, principal and leases of school, university, asylum and other lands. A deposit receipt shall be issued by the Comptroller for the daily total of such remittances from each Department; and the cashier of the Treasurer's Department shall keep a cash book, to be called 'suspense cash book,' in which to enter these deposit receipts, and any others issued for cash received for which no deposit warrants can be issued, or when their issuance is delayed. As soon as the status of money so placed with the Treasurer on a deposit receipt is determined, it shall be transferred from the suspense account by placing the portion of it belonging to the State in the Treasury by the issuance of a deposit warrant, and the part found not to belong to the State shall be refunded."

Sec. 3 of Art. 7057b, supra, contains provisions similar to those contained in Art. 4388 above quoted.

It appears that the provisions of Art. 4388, supra, have been before the appellate courts in only two instances, both times the court considered money paid into the Texas Racing Commission Jockey Fund. In Daniel v. Richcreek, Tex.Civ.App., 118 S.W.2d 935, 937, no writ history, it was held that the provision of a statute relative to a determination of the status of the money means judicially determined especially if "the Treasurer and Comptroller, each of whom must act to effectuate a transfer of the money, do not voluntarily assume the responsibility of making such determination." This same cause was again before the Court of Civil Appeals in Daniel v. Richcreek, 146 S.W.2d 206, error dism., judgm. cor. There the court noted the fund was not public in character, the State had no interest in it, the fund had been voluntarily surrendered to a receiver and the officials had no duty to perform in their official capacities with reference to it. The court noted that the Act creating the Commission had been repealed.

It is our opinion that Art. 4388, supra, prescribes methods for bookkeeping relative to funds and accounts and for their payment into the State Treasury and for refunds. However we do not think the statute can be reasonably interpreted to confer on parties such as appellant the right to sue the State for a refund of money. No provision for such suit is contained in the article while Art. 7057b, supra, does provide for such suit.

The judgment of the trial court dismissing the cause is affirmed.

Affirmed.