**S. W. SIBLEY et al., Appellants,**

v.

**George P. HILL et al., Appellees.**

No. 5370.

Court of Civil Appeals of Texas.

El Paso.

Jan. 13, 1960.

Finley, Dickie & Scogin, Kermit, for appellants.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Midland, Thompson, Walker, Smith & Shannon, K. K. Smith, Jr. and Charles B. Harris, Fort Worth, Charles B. Wallace and Frank C. Bolton, Jr., Dallas, for appellees.

ABBOTT, Justice.

Appellants brought this suit for partition of the interest owned by appellants jointly with appellees in two oil and gas leases, and for the cancellation of the operating agreement under which the two leases are being

operated. Appellee Magnolia Petroleum Company has an interest in one of the leases, but not in the other. Magnolia entered a motion for severance in the trial court, but such motion was overruled. The case was tried before the court without a jury and, after hearing the testimony, the court entered judgment that the appellants take nothing by their suit, and also entered judgment that the operating agreement under which the two leases were being operated required that appellants pay the operating charges and bills submitted to them before submitting disputed charges to arbitration, and that the agreement authorized and entitled appellees to prorate and allocate to the property covered by said agreement, on a per well basis, a proportionate part of the costs and expenses incurred in the operation of all wells in the field, this including wells other than those in which appellants had an interest. From this judgment appellants brought eight points of error. Points One through Four complain of the failure of the trial court to grant the requested partition, and these points will be discussed together. Point Five complains that the operating agreement between appellees and appellants placed a restraint on the alienation of appellants' property, and it was therefore void. Points Six, Seven and Eight charge error in that the court refused to find a breach of the operating agreement, for the reason that appellees failed to arbitrate the protested bills; in holding that appellees could prorate expenses through the operation of property in which appellants had no interest, and requiring appellants to pay all submitted bills before arbitration. These last three points shall be discussed together.

The record shows that appellants acquired an interest in the two leases by foreclosure sale in November of 1952, and, at that time, appellee Hill was the operator of these leases (and others) by virtue of an operating agreement entered into at a previous date. Appellants had knowledge of the existence of the operating agreement prior to the time of their purchase. Appel-

lants paid their proportionate part of the bills for a time, and then ceased to pay. The operator, appellee Hill, brought suit in 1954 for the unpaid bills, and the suit was settled upon the payment of the debt. Then, in April of 1955, all the parties entered into a new operating agreement, which is the one in question in the present case. The portions of the operating agreement pertinent to this suit are:

"9.

"In the event any party hereto desires to sell the interest of such party or any part thereof in the premises covered hereby, the other parties shall have a preferential right to purchase the same. In such event the party desiring to sell shall promptly communicate to the other parties the offer received from a prospective purchaser ready, willing, and able to purchase, together with the name and address of such prospective purchaser, and the other party or parties shall thereupon have an option for a period of five (5) days after the receipt of such notice to purchase such interest on like terms; provided, however, that the limitations of this paragraph shall not apply where any party hereto desires to dispose of his or its interest by a merger, reorganization, consolidation, or sale to a subsidiary or to any company in which such party hereto owns a majority of the stock, or to mortgage the interest of such party. In the event of an assignment under the provisions of this numbered paragraph to more than one party, the parties to whom such assignment shall be made shall be entitled to participate therein in proprotion to their respective interests."

"13.

"This contract shall be effective March 1, 1955, and all charges paid on or after said date by Operators in connection with the development and operation of the premises shall be con-

trolled hereby. This contract shall continue in force so long as oil, gas or other minerals are produced from the land covered hereby under the leases owned by the parties hereto, and shall be binding upon the parties hereto and their respective heirs, successors and assigns."

"15.

"All notices necessary to be given under the terms of this agreement shall be given by registered letter  *  *  *."

█ It is true, as argued by appellants, that the right of partition is absolute unless there is an expressed or implied agreement not to partition. There are portions of the operating agreement that we must look to, in order to resolve whether or not there was such an agreement. First, the agreement stated that if any party desired to sell any or all of his or its interest, the other parties should have a preferential right to purchase same. Second, that the agreement was to be in force so long as oil, gas or other minerals were produced; and, third, that all notices necessary to be given under the terms of this agreement should be given by registered mail to the parties involved.

█ The record indicates that there had been no offer of sale to the joint lease holders by appellants. There was an attempt, during the trial, to make some offer, but it was not in keeping with the written agreement. Any partition by the trial court, either in kind or by sale and division of the proceeds, would have worked a cancellation of the oil and gas lease contract or, as in this case, the operating agreement, as discussed in Elrod v. Foster, Tex.Civ. App., 37 S.W.2d 339, 342. The court, in the Elrod case, went farther and stated, "We think the proposition needs no extended discussion that a part owner of a mineral estate in land, who has contracted with others having interests to pay his proportionate part of expenses of drilling and developing the premises for oil and gas, cannot demand a partition of the mineral es-

tate so as to work a cancellation of the drilling contract, and thereby relieve himself of his proportionate part of the expenses of developing the lease." We believe this to be the law in Texas, and applicable to the present case. The provisions in the operating agreement of preferential right to purchase, and the provision indicating a desire of the parties to retain the cotenancy status and operational status during the life of the leases indicates to us a clear implication that the absolute right of partition had been contracted away. We find further support in: Warner v. Winn, Tex.Civ.App., 191 S.W.2d 747; Odstrcil v. McGlaun, Tex.Civ.App., 230 S.W.2d 353; 47 C.J. 321, sec. 131; 68 C.J.S. Partition § 44, p. 66.

█ Appellants' fifth point of error raises the question of a restraint on the alienation of appellants' property. We cannot agree with this argument. Appellants have the right, under the contract, to sell. The restraints upon such sale are not unusual, but that procedure is what was contracted for, and can be enforced. The preferential right to purchase does not place such a restraint on the alienation of appellants' property that it can be legally complained of. Appellants' fifth point of error is overruled.

█ Appellants' Points Six, Seven and Eight complain of a breach of the contract by appellees because of the failure of appellees to arbitrate; the court's findings that appellants were to pay a pro rata share of the operating expenses even though appellant had no interest in some of the properties being operated; and the trial court's holding that appellants were required to pay all expenses incurred and charged to them before submitting disputed matters to arbitration. Without burdening the record with the whole of the contract, we find that each of the three items complained of is covered in the operating agreement, and were correctly found by the trial court. The record reflects that appellants freely, and with legal advice, entered into a written

contract, and also that they were experienced in the oil business. They may not be satisfied with the contract, but we can find no grounds to relieve appellants of the burdens the contract may impose. The courts are not authorized to re-write contracts or relieve the parties to a contract of their obligations, unless there is an apparent equitable reason to do so.

Finding the trial court's action to be supported by sufficient evidence, we overrule appellants' points of error and affirm the judgment of the trial court.