**CLIMATIC AIR SALES, INC., a Corporation, Appellant,**

**v.**

**CLIMATIC AIR DISTRIBUTORS OF SOUTH TEXAS, a Corporation, et al., Appellees.**

**No. 7216.**

Court of Civil Appeals of Texas.

Texarkana.

May 3, 1960.

Rehearing Denied May 31, 1960.

Goodwin, Cavin & Lambert, Tyler, for appellant.

Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for appellees.

CHADICK, Chief Justice.

This is an appeal from a summary judgment for defendants in the trial court. Judgment is reversed and the case remanded for further development.

The appellant, Climatic Air Sales, Inc., the corporate successor to J. W. Durrett, as plaintiff, filed a suit upon sworn account for items totalling $14,563.11 and an attorney fee of $4,854.37, in a district court of Smith County, against the appellees, David Bland and L. E. Wilson, Jr., d/b/a Climatic Air Distributors of South Texas, as defendants. Climatic Air Sales, Inc., will be referred to as manufacturer and the Bland and Wilson firm as distributor in the following discussion.

After notice and hearing the Judge of the trial court sustained a motion for summary judgment filed by the distributor and thereby held that the agreement of March 7, 1958 was a conspiracy in restraint of trade as defined by Art. 7428 Vernon's Ann. Civ.St., and was void and unenforceable by reason of the provisions of Art. 7437 V. A.C.S. These two articles are a part of the comprehensive statutory expressions of public policy relating to Monopolies, Trusts, and Conspiracies against Trade, embraced in Title 126, Revised Civil Statutes of Texas, 1925, Vernon's Ann.Civ.St. art. 7426 et seq.

The record before the trial court in the summary proceeding, contained the manufacturer's petition on sworn account, the answer and cross-action of the distributor and the motion for summary judgment which had attached to it an affidavit that the items listed in the account were purchased under the terms of the agreement of March 7, 1958 and a copy of that agreement. The contract with the formal parts and lists of counties omitted and the paragraphs numbered for easier reference is as follows:

"(1) This letter will evidence the agreements between David Bland and L. E. Wilson, Jr., on the one hand, and J. W. Durrett on the other, which agreements are as follows:

"(2) David Bland and L. E. Wilson, Jr., agree in their individual capacities or as owners of all of the stock of a corporation to be formed by them to act as distributors of Climatic Air refrigerated automobile air conditioners in the following counties of the State of Texas: (Counties listed).

"(3) It is agreed that Bland and Wilson and/or the corporation formed, have had experience in merchandising

and selling automobile air conditioning units and that they will use their best efforts to promote the sale of Climatic Air throughout the territory, and that J. W. Durrett and/or his sales organization will assist by furnishing materials which are available for advertising.

"(4) This agreement to remain in effect for a period of three years from acceptance hereof, provided, however, that should David Bland and L. E. Wilson, Jr., or such corporation as may be formed, fail to sell a total of 400 Climatic Air units in Corpus Christi, Austin and San Antonio during the first year of this agreement, then J. W. Durrett and/or his sales organization shall have the right and option of cancelling the agreement as to these areas. The counties which will be released under the cancellation are as follows: (Counties listed).

"(5) J. W. Durrett, individually, and as Executive Officer of the company handling Climatic Air, agrees to turn over to Bland and Wilson and/or their corporation, all inquiries and orders for the above described area received for Climatic Air and that we will refrain from appointing other distributors in the area hereinabove set out during the term of this contract.

"(6) Terms of the sale of units will be that you will remit to Climatic Air upon receipt of units cash, less 2% if paid at the time of delivery to you. This account payable at Tyler, Texas. Sales made f. o. b. Tyler.

"(7) Contemporaneously with the acceptance of this agreement J. W. Durrett will pay the sum of Five Hundred Dollars ($500.00) to David Bland and L. E. Wilson, Jr., to assist in defraying expenses in opening a new location for the handling of Climatic Air. It is agreed that the business name of the organization, whether it be partnership or corporation, may include in its name the words 'Climatic Air Distributors of South Texas.'

"(8) It is further understood and agreed that any defective parts falling within the terms of the general warranty to ultimate purchasers of Climatic Air units may be returned by you for credit, accompanied by properly filled out return material tag, and that permission of Climatic Air will not be required for these returns. You shall pay the freight one way and Climatic Air will pay the freight the other way.

"(9) This contract is not assignable, without the specific consent in writing of J. W. Durrett and/or Climatic Air Sales, Inc., except as to the corporation herein mentioned."

Paragraphs II and III of the distributors cross-action read:

"II.

"By the terms of the above mentioned Contract, Cross-Defendant appointed Cross-Plaintiffs as distributor for Climatic Air refrigerated automobile air-conditions in approximately sixty-six (66) Counties named in said agreement and Cross-Defendant agreed that during the term of said Contract it would 'turn over to Bland and Wilson and/or their Corporation, all inquiries and orders for the above described area received for Climatic Air' and agreed to 'refrain from appointing other distributors in the area' described. Cross-Plaintiffs represent that notwithstanding such agreements by Cross-Defendant, Cross-Defendant immediately began to contact many of Cross-Plaintiffs' dealers and customers within the contract area and offered to sell Climatic air-conditioning units to them at a price of $15.00 less than the suggested dealer price, which it had quoted to Cross-Plaintiffs. That as a result of Cross-Defendant's offering to sell and selling such units

at a reduced price in the same area where Cross-Plaintiffs were attempting to sell such units, it was necessary for Cross-Plaintiffs to reduce their price in the entire area by $15.00 per unit. During the term of said contract, Cross-Plaintiffs sold 600 units at the reduced price and were thereby damaged by Cross-Defendant's breach of said Contract in this respect by the amount of $9,000.00.

"III.

"Cross-Plaintiffs further represent that Cross-Defendant breached said Contract in making sales to others during the term of the Contract within the area where it had agreed to turn over to Cross-Plaintiffs all inquiries and orders for such products. Cross-Plaintiffs are not in a position to state definitely the number of units sold by Cross-Defendant within such area during the term of the Contract, as this information is a matter solely within the knowledge of Cross-Defendant, but Cross-Plaintiffs do know that Cross-Defendant sold many units to a firm by the name of LoMerc, Inc., and to other dealers and garages within the area covered by Cross-Plaintiffs' Contract. The units sold to LoMerc Inc., were identical to the Climatic air-conditioning units sold to Cross-Plaintiffs except that they bore a different name plate and they were in direct competition with Cross-Plaintiffs in the area covered by Cross-Plaintiffs' Contract. Cross-Plaintiffs, upon information and belief, allege that during the term of said contract, Cross-Defendant sold at least 1000 units within the area covered by Cross-Plaintiffs' Contract and deprived Cross-Plaintiffs of a profit of $45.00 per unit on such sales, to Cross-Plaintiffs' damage in the amount of $45,000.00. That had Cross-Defendant abided by its Contract to refer all inquiries and orders for such units within the area covered by Cross-Plaintiffs' Contract

to Cross-Plaintiffs, and if Cross-Defendand had otherwise complied with its Contract, Cross-Plaintiffs would have realized a profit of $45.00 on each and every unit sold within the area covered by their Contract."

It is to be observed that the contract does not in express terms commit or bind the manufacturer to sell units to the distributor. Resort to implication and construction of the language used must be made to arrive at a conclusion that the manufacturer agreed to sell units exclusively to the distributor in the area described. Among the stated purposes of the contract is that of creating a distributor in South Texas, opening a new location for handling the manufacturers product and using the experience of the distributor to promote sales. The provisions of paragraph 5 appear to be the basis of the trial court's conclusion that the agreement is a combination in restraint of trade.

■ The agreement is susceptible of being construed as a contract by the manufacturer to sell air conditioning units exclusively to the distributor in the 66 counties named. But such meaning is not expressed in apt words; it is only by construction the language can be given that meaning. Giving the words used in framing the agreement their ordinary and usual meaning, which must be done in construing a contract such as this, the language "we will refrain from appointing other distributors in the area" and "agrees to turn over to Bland and Wilson and/or their corporation, all inquiries and orders for the above described area" can be understood to mean that the manufacturer is bound to sell its air conditioning units exclusively to the distributor in the counties named. But other language, omissions and the stated purpose of the contract leave an element of uncertainty as to the true understanding and agreement of the parties.

The phrase "orders for the above described area" is not clear and unambiguous. It might refer to a processing and handling

of orders by a distributor and not a refusal to sell to any one except the distributor. It may be that it refers only to purchase orders for units but a process of construction must be used to reach that meaning. The Century Dictionary and Cyclopaedia ascribed more than 20 meanings to the word "order". The word cannot be said to have a fixed meaning under all circumstances but its meaning must be determined from the context in which it is used and with reference to the purpose sought to be expressed.

The clause "we will refrain from appointing other distributors" is also an ambiguity. As used it could refer to Bland and Wilson. Assume, however, that it refers to the manufacturer and means the manufacturer agrees not to appoint other distributors. Such meaning standing alone does not exclude a recognition by the parties that existing distributors, dealers and salesmen were then operating in the area affected by the contract and is consistent with the admitted circumstances that other distributors, dealers and salesmen operated in the area immediately after the contract was made. The language does not counter an interpretation that the contract contemplated and recognized that other distributors, dealers and salesmen were then authorized to sell in the territory.

■ Since the meaning of the terms used are uncertain and the intention of the parties not clear, under all the circumstances disclosed by the record including the admission made in distributors cross action, the practical construction placed upon the agreement by the parties before the dispute arose has relevancy in determining the true agreement. See Lone Star Gas Company v. X-Ray Gas Company, 139 Tex. 546, 164 S.W.2d 504 and the numerous authorities cited therein. Syl. 5–7.

The admissions made by the distributor in its cross-action, which are quoted above, that the manufacturer had been selling to many others in the area shows that a practical construction of the agreement antedating this dispute had been made which, if it expressed the true contractual relationship of the parties, would not violate the monopoly laws. It is true that the pleading alleges the manufacturers' sales to others was a breach of contract; nevertheless, it is an admission of a construction of the contract, without complaint from the distributor prior to this suit, so far as the record shows, that the manufacturer was not obligated to sell exclusively to the distributor and affirmatively shows that the manufacturer had not construed the contract as requiring it to violate the provisions of Art. 7428 in its performance under the contract. This admission of a practical construction of the contract indulged by the parties prior to suit raises an issue of fact as to the meaning of the language the parties used in writing their agreement.

■ Generally where parties to a contract have given it a construction by their acts and partial performance the court will consider and give great, if not controlling, weight to their construction in making an interpretation of the agreement. Marathon Oil Company v. Edwards, 96 S.W.2d 551, err. dis.; McMillin v. Wilson, Tex.Civ. App., 121 S.W.2d 1029, E. Dism.; Scanlan v. Houston Lighting & Power Co., 62 S.W. 2d 537 E/R. Texas Law of Evidence, (McCormick and Ray), p. 542, Sec. 1687; 17 C.J.S. Contracts § 325, p. 755; 10-A, T. Juris. p. 363–366, Sec. 179. However, the practical construction made by the parties is resorted to only when the language used is ambiguous, uncertain, indefinite, obscure, equivocal, or not clear and there is doubt as to its meaning and application. 2 Texas Law of Evidence (McCormick and Ray) Sec. 1681–1687. Contracts 10-A, T.J. p. 366, Sec. 179. In this case the absence of apt language to show an agreement by the manufacturers to sell exclusively to the distributor and action of the parties consistent with a non-exclusive franchise renders doubtful the actual agreement made and requires the ascertainment of the facts and circumstances surrounding the transaction.

In this summary proceeding under Rule 166–A, the distributor had the burden of showing conclusively that there was no genuine issue as to any material fact establishing under the provisions of Arts. 7428 and 7437 its defense against the sworn account.

Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422, 427, n. w. h., quotes from 22 Texas Law Review page 438 as follows:

" * * * It is historical that in administering summary judgment practice the courts have been inclined to be critical of the showing made by the moving party. Customarily he is held strictly to a *conclusive showing* that no fact issue exists and that he is entitled to judgment without further delay. Conversely, the courts accord the resisting party considerably more indulgence; the motion will be denied if it appears that a substantial fact dispute may exist, regardless of informalities or defects in the resisting party's papers."

and then concludes:

"The underlying purpose of Rule 166a was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. It should be temperately and cautiously applied, 'lest abuse reap nullification.'"

The Court of Civil Appeals in De La Garza v. Ryals, 239 S.W.2d 854, 856, n. w. h., in the course of its opinion quoted from Sarnoff v. Ciaglia, 165 F.2d 167, 169, where it is said:

' " * * * All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment."

Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, at page 931 sums up the duty of the trial court in considering the record before it in a summary judgment proceeding and cites and quotes from Kaufman v. Blackman and De La Garza v. Ryals.

Since the record does not conclusively show an agreement in restraint of trade, and does not exclude but rather upon its face shows a practical construction of the agreement which is not illegal, under the authorities cited next above the summary judgment was improvidently granted and the case must be remanded to the trial court for further proceedings. Remand does not imply the necessity of a trial on the merits if under additional pleadings, admission or evidence it may be conclusively determined that no genuine issue of fact exists.

The judgment of the trial court is reversed and remanded.