**Martha Paul Rogers FORDERHAUSE, et al., Appellants,**

v.

**CHEROKEE WATER COMPANY, Appellee.**

No. 8890.

Court of Civil Appeals of Texas, Texarkana.

Aug. 25, 1981.

Rehearing Denied Oct. 13, 1981.

T. A. Bath, Dean W. Turner, Bath & Turner, Henderson, Ruff P. Wall, Carthage, for appellants.

Alison I. McLemore, Longview, Gordon Wellborn, Henderson, Lloyd Lochridge, John W. Stayton, Jr., McGinnis, Lochridge & Kilgore, Austin, for appellee.

CORNELIUS, Chief Justice.

This litigation involves the validity and enforceability of a preferential right to purchase agreement covering oil, gas and other minerals, and the applicability of such an agreement to an oil and gas lease covering those minerals. The trial court rendered summary judgment for the holder of the preferential right, declaring that the agreement did apply to the execution of an oil and gas lease, and ordering specific performance. The mineral owners' plea for reformation of the agreement was severed and set for trial as a separate cause of action. The mineral owners have appealed.

In 1947, J. E. Rogers and others were the fee owners of a tract of 59.71 acres of land in Rusk County, Texas. Cherokee Water Company planned to build a lake which would inundate the tract. On August 19, 1947, the mineral owners executed a deed to Clyde Hall, Trustee (who later conveyed to Cherokee Water Company), conveying the surface of the 59.71 acre tract, but reserving all of the oil, gas and other minerals. The deed also gave the grantee and his assigns the first option or preferential right to purchase the oil, gas and other minerals should the mineral owners ever desire and agree to sell them. The pertinent provisions of the deed and preferential right to purchase are set out as follows:

"In reference to the reservation of oil, gas and other minerals, it is expressly understood and agreed that the above land is purchased by Grantee for the purpose of forming a Lake and that all or a part of said land will be covered with water that will vary from a few to many feet in depth. This right of Grantee to cover said land with water is superior to the rights of Grantor to use said land to remove said minerals as above set out

and the *mineral owners* shall not, in any manner, subject the Grantee to damages, liabilities or obligations of any kind or character by reason of the construction of said dam and covering said land with water. The rights of Grantor to said minerals shall be the same as if such minerals were conveyed to Grantor after said Lake is created and established. If a well or wells are drilled to remove said minerals, such well or wells shall be so operated and maintained as not to in any manner pollute the Lake water *with* salt water, hydrocarbons or other foreign matter. If a dike or road is built from the shore line to such well or wells, the same shall be so located as not to interfere with the use of said Lake by Grantee, his successors or assigns, and such dike or road shall not be constructed across said Lake so as to obstruct free and continuous passage of boats going to and from one part of the Lake to another part of such Lake. No act shall be performed by the *mineral owner* or his successors and assigns that is not necessary in order to remove said minerals.

"Grantee is hereby given the first option *to purchase the oil, gas and other minerals* herein reserved, at the same price and on the same terms as *Grantor has agreed to sell* to a third party; such option to be accepted or rejected within five (5) days after Grantee has been furnished with the bona fide offer made by such third party. Failure to exercise such option on *one sale,* shall not be a waiver to purchasing at *any subsequent sale or sales* by Grantor." (Emphasis added.)

The land was subject to an oil and gas lease at the time the deed was executed, and during the succeeding thirty years after the execution of the deed several other leases were executed and production was obtained, but none of the parties attempted to comply with or to enforce the purchase agreement until the mineral owners executed an oil and gas lease to Messrs. Boase and Wood in late 1976. Thereafter, on February 24, 1978, Cherokee Water Company

notified Mrs. J. E. Rogers and the other interested parties that it considered that the lease to Boase and Wood constituted a sale of the minerals within the terms of the purchase agreement, and asked for information concerning the terms of the lease so that it could exercise its right to purchase. The mineral owners furnished the information concerning the lease terms, but rejected Cherokee's proposition that it was entitled to a first option to purchase the lease. Cherokee then filed suit for declaratory judgment and specific performance against all parties having title to the minerals or leasehold estates. The mineral owners and other defendants answered raising various defenses. They also filed an alternative plea asserting that if the purchase agreement was construed to apply to the execution of an oil and gas lease, as distinguished from an ordinary sale of the minerals in fee, a mutual mistake had been made in drafting the agreement and it should be reformed to exclude oil and gas leases. Although the landowners raised a number of equitable defenses such as laches, estoppel and the like, both sides moved for summary judgment on purely legal grounds. After severing the mineral owners' plea for reformation, the trial court granted Cherokee's motion for summary judgment.

The mineral owners' first contention on appeal is that the preferential right to purchase agreement is unenforceable because it is in violation of the rule against perpetuities. We disagree.

■ The public policy of our State recognizes that alienability is a necessary and desirable legal incident to the ownership of property, and consequently restraints on alienation are not favored. This public policy is manifested in Article I, § 26 of the Texas Constitution which prohibits perpetuities.[1] The rule against perpetuities is that no interest within its scope is valid unless it must vest, if at all, no later than twenty-one years after some life in being at the time of the creation of the interest, plus the

normal period of gestation. *Clarke v. Clarke*, 121 Tex. 165, 46 S.W.2d 658 (1932); 45 Tex.Jur.2d Perpetuities and Restraints, Etc. § 2, at 96. Thus, a grant or interest which may not vest within that period of time, and which operates to take the property out of commerce and restrict its alienation, is void. *Brooker v. Brooker*, 130 Tex. 27, 106 S.W.2d 247 (1937); *Weber v. Texas Co.*, 83 F.2d 807 (5th Cir. 1936), *cert. denied*, 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413 (1936).

■ A preferential right to purchase differs from a standard option in that the latter gives the optionee the right to compel a sale of the property at a stipulated price, whereas the holder of a preferential purchase right has no right to compel a sale or to prevent a sale, but only has the right to be offered the property at a fixed price or at a price offered by a bona fide purchaser if and when the owner decides to sell. Reasoner, *Preferential Purchase Rights In Oil And Gas Instruments*, 46 Texas L.Rev. 57 (1967).

■ There are two views in the United States concerning whether a preferential right to purchase is unenforceable because in violation of the rule against perpetuities. One view is that such a right, if unlimited as to time, is violative of the rule and will not be enforced. See *Robroy Land Co., Inc. v. Prather*, 24 Wash.App. 511, 601 P.2d 992 (1979); *Martin v. Prairie Rod and Gun Club*, 39 Ill.App.3d 33, 348 N.E.2d 306 (1976); *Atchison v. City of Englewood*, 170 Colo. 295, 463 P.2d 297 (1969); *Melcher v. Camp*, 435 P.2d 107 (Okl.1967); *Neustadt v. Pearce*, 145 Conn. 403, 143 A.2d 437 (1958); Annot., 40 A.L.R.3d 920 (1971). The other view is that the rule against perpetuities is only a means of preventing unreasonable restraints on alienation, and if a preferential right to purchase does not operate to restrain alienation, but only dictates who shall have the first right to acquire property when and if the owner desires to sell it, then the agreement is not within the prohi-

1. "Sec. 26. Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State."

bition. See *Foster v. Bullard*, 496 S.W.2d 724 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.); *Sibley v. Hill*, 331 S.W.2d 227 (Tex.Civ.App.—El Paso 1960, no writ); *Courseview, Inc. v. Phillips Petroleum Co.*, 258 S.W.2d 391 (Tex.Civ.App.—Galveston 1953, writ ref'd n. r. e.); *Weber v. Texas Co.*, supra. The latter view appears to be the rule in Texas and we will follow it in this case. The purchase right involved here does not constitute an unreasonable restraint on alienation. There is no fixed price. There is no absolute option unlimited as to time. There is only the right, exercisable whenever the owner desires to sell, to purchase the property by meeting any bona fide offer. The holder of the right cannot force or prevent a sale; neither can he fix the price for a sale. In those circumstances there is not such a restraint on alienation as would violate our public policy. *Weber v. Texas Co.*, supra.

■ We agree, however, with the mineral owners' assertions that it was error to grant summary judgment interpreting the agreement to include leases, and further that the plea for reformation should not have been severed from the remainder of the litigation.

Contractual provisions in deeds, like those in any other contract, are to be interpreted by ascertaining the intent of the parties to the instrument. *Garrett v. Dils Company*, 157 Tex. 92, 299 S.W.2d 904 (1957); *Harris v. Windsor*, 156 Tex. 324, 294 S.W.2d 798 (1956); *Worley v. Empire Gas & Fuel Co.*, 129 Tex. 532, 103 S.W.2d 368 (1937). That intention is to be gathered from the language used in the instrument rather than by the subjective intent of the parties, but the words used must be given the usual and normal meaning ascribed to them by ordinary persons in the same or a similar situation. *Fox v. Thoreson*, 398 S.W.2d 88 (Tex. 1966); *Climatic Air Sales, Inc. v. Climatic Air Distributors*, 336 S.W.2d 461 (Tex.Civ. App.—Texarkana 1960), *rev'd on other grounds*, 162 Tex. 237, 345 S.W.2d 702 (1961); *Bean v. Bean*, 79 S.W.2d 652 (Tex. Civ.App.—Texarkana 1935, writ ref'd); 13

Tex.Jur.2d Contracts § 135 at 312. In the technical legal sense an oil and gas lease amounts to a defeasible conveyance of the minerals,[2] but it is common knowledge in the area of real estate transactions and in the oil and gas business in particular, that the terms *sale of the minerals* and *lease of the minerals* have vastly different and entirely distinct meanings, and it must be presumed that the parties used the words *purchase* and *sale* of the minerals in their usual sense, unless it be shown that they used them in a different or technical sense. *Fox v. Thoreson*, supra; *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554 (1953); *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360 (Tex.Civ.App.—Amarillo 1977), *affm'd*, 569 S.W.2d 480 (Tex.1978); *Mullins v. Elieson*, 611 S.W.2d 921 (Tex.Civ.App.—Amarillo 1981, no writ). With these rules in mind, and considering the instrument in its entirety, the provision here is susceptible of more than one reasonable construction. The terms *purchase* and *sale*, standing alone, are not ambiguous, but when all of the words and phrases used are considered along with all of the circumstances surrounding the execution of the deed, as must be done in a case of this type, the meaning of the provision becomes doubtful as applied to the controversy existing here. See *Harris v. Rowe*, 593 S.W.2d 303 (Tex.1979); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968); *Spence & Howe Construction Co. v. Gulf Oil Corp.*, 365 S.W.2d 631 (Tex.1963); *Bache Halsey Stuart, Etc. v. Alamo Sav. Ass'n*, 611 S.W.2d 706 (Tex.Civ.App.—San Antonio 1980, no writ); *City of Houston v. McCarthy*, 340 S.W.2d 559 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.); 3 A. Corbin, Contracts § 579 at 412–421 (1960), and cases cited. For example, only the words *purchase, sell* and *sale* are used, and the word *lease* is never used. The term *mineral owners* is used twice in the provision, whereas the terms *mineral lessees* or *lessees*, the commonly used terms for the owners of an oil and gas lease, are never used. Summary

**2.** *Mills v. Brown*, 159 Tex. 110, 316 S.W.2d 720 (1958).

judgment proof indicated that the land was subject to an oil and gas lease at the time the deed was signed, that several subsequent leases were executed during the succeeding thirty years, and that production was even obtained by virtue of those leases from a gas unit in which both Cherokee Water Company and the mineral owners shared in the royalty, yet neither Cherokee nor the mineral owners by their actions indicated any thought that the preferential right to purchase had been activated by the execution of any of those leases.

The provision regarding future sales adds to the uncertainty. As Cherokee notes, the provision could indicate that leases were contemplated as being within the provision because they are effective for limited terms only and thus may be executed successively by the mineral owner; yet the provision could just as reasonably refer to repeated sales of partial undivided interests in the minerals, or to sales of segregated parcels of the minerals.

Cherokee relies upon the rule that if a particular term has been given a definite legal meaning by judicial interpretation, it must be presumed that the parties intended to use the term in that sense, but we do not find that rule to be applicable here. An oil and gas lease has been judicially declared to constitute a defeasible conveyance of the minerals in place, but the words and phrases used in the instrument before us have not been given distinct judicial interpretations in the context of the circumstances and disputes which exist here. The decision in *Sanchez v. Dickinson*, 551 S.W.2d 481 (Tex.Civ.App.—San Antonio 1977, no writ), does not require a different result. There was no uncertainty of meaning there as gathered from the four corners of the document or from the circumstances attending its execution, as we have in this case.

Viewing the instrument as a whole and considering the summary judgment evidence of surrounding circumstances attend-

ing the execution of the deed, as well as the construction which the parties themselves placed upon it,[3] it cannot be said that the record establishes as a matter of law the intention of the parties, and summary judgment was therefore improper.

■ In addition, we find that the plea for reformation constituted a compulsory counterclaim and should not have been severed from the remainder of the controversy. Rule 97(a) of the Texas Rules of Civil Procedure states in part as follows:

"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, ... if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim ...".

Cherokee Water Company brought this suit seeking a declaratory judgment that its purchase right under the deed included the right to lease the land. The mineral owners' counterclaim sought to reform the deed on the basis of mutual mistake if it was legally construed to include an oil and gas lease as a sale. Both claims arise out of the same transaction; indeed, the same instrument. That being the case, the counterclaim was required to be filed in this suit; and if it was necessary that it be filed in this suit, it was also imperative that it be tried in the same cause. *Bohart v. First Nat. Bank in Dallas*, 536 S.W.2d 234 (Tex. Civ.App.—Eastland 1976, writ ref'd n. r. e.); *Ball v. Cooper-Stanley Company*, 413 S.W.2d 467 (Tex.Civ.App.—Dallas 1967, no writ); *Spangler v. Hickey*, 401 S.W.2d 721 (Tex.Civ.App.—Tyler 1966, no writ); *Bolding v. Chapman*, 394 S.W.2d 862 (Tex.Civ. App.—Austin 1965, writ ref'd n. r. e.).

Cherokee cites the case of *McGuire v. Commercial Union Ins. Co. of N. Y.*, 431 S.W.2d 347 (Tex.1968), as supporting its argument that the trial court can sever even a compulsory counterclaim in its discretion. The *McGuire* case involves a narrow excep-

**3.** See *Harris v. Rowe*, supra; *James Stewart & Co. v. Law*, 149 Tex. 392, 233 S.W.2d 558 (1950); *Leonard v. Prater*, 36 S.W.2d 216 (Tex. Com.App.1931, holding approved); *Col-Tex Re-*

*fining Co. v. Coffield & Guthrie, Inc.*, 264 S.W.2d 462 (Tex.Civ.App.—Eastland 1954, writ ref'd).

tion to the rule of the severability of compulsory counterclaims, and applies only in those cases in which the original suit has been settled, and consequently where a severance would not result in duplicitous trials of interwoven or identical issues. *McGuire v. Commercial Union Ins. Co. of N. Y.,* supra at 351; *Cogdell v. Fort Worth Nat. Bank,* 544 S.W.2d 825 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.), *cert. denied sub nom, Cogdell v. Cogdell,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); 47 Texas L.Rev. 344 n.9 (1969); 21 Baylor L.Rev. 431, 435 (1969). That is not the situation we have here. Even if the counterclaim here were not to be considered compulsory, we would hold that the issues are so interwoven that a severance would occasion unnecessary litigation and a multiplicity of suits. *Bohart v. First Nat. Bank in Dallas,* supra.

In view of our disposition of the foregoing contentions, it is not necessary that we discuss the other points of error. The judgment of the trial court is reversed and the cause is remanded for trial on all issues.

HUTCHINSON, J., concurs.

BLEIL, Justice, dissenting.

The majority holds that it was error to grant summary judgment interpreting the agreement to include leases and to sever the plea for reformation. I disagree on both points and respectfully dissent.

In reversing because of an uncertainty of meaning in the agreement, this Court has not applied well settled law. Whether the parties intended the first option to purchase to apply to a sale or an oil, gas, and mineral lease should not be a factual issue in this case. Even if we assume that an apparent ambiguity exists in the words used in the agreement, our law remains that an oil, gas, and mineral lease is a sale of an interest in land. *Avis v. First National Bank of Wichita Falls,* 141 Tex. 489, 174 S.W.2d 255 (1943); *Short v. W. T. Carter & Brother,* 133 Tex. 202, 126 S.W.2d 953 (1938); *San-*

*chez v. Dickinson,* 551 S.W.2d 481 (Tex.Civ. App.—San Antonio 1977, no writ); *Tide Water Associated Oil Company v. Giles,* 277 S.W.2d 291 (Tex.Civ.App.—Austin 1955, writ ref'd n. r. e.); *Irons v. Fort Worth Sand & Gravel Co.,* 260 S.W.2d 629 (Tex. Civ.App.—Fort Worth 1953, writ ref'd n. r. e.). Application of these authorities to the summary judgment proof in this case inescapably compels the conclusion that the parties' first right of refusal agreement covers the oil, gas, and mineral lease.

The majority further errs in basing a decision on its understanding of what is common knowledge in the area of real estate transactions and in the oil and gas business. It is dangerous precedent for such *understanding* to be a basis for departure from well established rules of law.

I disagree, too, with the holding that the trial court's severance of the counterclaim for reformation is error. The stated basis for this holding, that the issues are so interwoven that a severance would occasion unnecessary litigation and a multiplicity of suits, flies in the face of this record.

Initially, I would hold that the severance was within the broad discretion of the trial court. *McGuire v. Commercial Union Ins. Co. of N. Y.,* 431 S.W.2d 347 (Tex.1968); *Pierce v. Reynolds,* 160 Tex. 198, 329 S.W.2d 76 (1959); *Hamilton v. Hamilton,* 154 Tex. 511, 280 S.W.2d 588 (1955); Tex.R.Civ.P. 41; 3 McDonald's, Texas Civil Practice § 10.25 (1970).[1] Then, I would look to the facts and circumstances surrounding the severance to determine whether an abuse of discretion occurred.

Usually a severance is a pretrial procedure that tends to cause a multiplicity of litigation. Here the trial court severed as a post summary judgment procedure. The motion to sever was made only after the initial granting of summary judgment and on the basis of expediting appellate review. The severance under these circumstances demonstrates a logical, utilitarian approach

---

1. Even *Bohart v. First Nat. Bank in Dallas,* 536 S.W.2d 234 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.), cited by the majority for the

proposition that it is imperative that there be no severance, recognizes that this is a discretionary matter.

and appears, perhaps, to be the most efficient and effective manner of disposing of this litigation, with the least expenditure of time, effort and money for all concerned. I see no abuse of discretion.

For these reasons, I dissent and would affirm the trial court's judgment.