Armando **GOMEZ LEON** et ux., Appellants,

v.

The **STATE** of Texas, Appellee.

No. 5854.

Court of Civil Appeals of Texas.

El Paso.

May 24, 1967.

Rehearing Denied Sept. 20, 1967.

Albert Armendariz, El Paso, for appellants.

Crawford C. Martin, Atty. Gen., Watson C. Arbold, Hawthorne Phillips, T. B. Wright, Carroll R. Graham, Robert D. McGee, George M. Cowden, A. J. Carubbi, Jr., and Charles Bedsole, Asst. Attys. Gen., Austin, for appellee.

OPINION

CLAYTON, Justice.

This is a condemnation case in which the State of Texas sought to condemn for a freeway 11,257 square feet of land situated in El Paso, Texas owned by appellants Armando Gomez Leon and wife. Special Commissioners awarded appellants $6,685.-00, from which award the State of Texas filed its objections and a jury trial was had in the County Court at Law of El Paso County, Texas. The jury found,

in answer to a single special issue, that the market value of the land on the day of taking (March 1, 1965) was $3,377.10. Judgment was rendered on this verdict, from which judgment appellants take this appeal.

Appellants present ten points of error which will be discussed in groups in so far as possible. Their first point of error complains of the ruling of the trial court in allowing the State to ask appellant Gomez Leon what he had paid for the property when the same was purchased, at least fourteen years before the date of condemnation. Appellants rely on Thompson v. State, 319 S.W.2d 368 (Tex.Civ.App., 1958; n. w. h.) where it is stated on pages 370 and 371:

"The general rule governing the above is stated in 16 Tex.Jur., Sec. 248, p. 572, as follows:

" 'The cost to the owner of the land and of the improvements subsequently made is not of itself evidence of market value. If such evidence is to be received at all, it is not admissible when a considerable interval of time has elapsed between the date of the purchase and the time of the litigation.'

"See also Scott v. McLennan County, Tex.Civ.App., 306 S.W.2d 943, W/E Ref. N.R.E.; Hubbard v. Harris County Flood Control Dist., Tex.Civ.App., 286 S.W.2d 285, W/E Ref.N.R.E.

"The object of the inquiry to the jury is to determine the reasonable market value of the property at the time of the taking. Market value in a condemnation suit is the price for which property will sell when offered by one who desires to sell, but is not obliged to do so; and is purchased by one who desires to buy, but is under no necessity of buying. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 [979]. Any evidence which may reasonably contribute to an answer of such issue is admissible. The price the owner paid for the property is not admissible as such (since it does not necessarily reflect on market value at the time of the taking). It may become admissible, however, if sufficient predicate be developed whereby the evidence tends in a reasonable manner to reflect on the market value at the time of taking. To render such evidence admissible, it should be shown that the sale was very recent; that values have not changed in the area since the date of such sale; that such sale was not a forced sale, or a 'kinfolks' sale'; and that such sale was one between a seller who desired to sell but was not obliged to do so, and a buyer who desired to buy but was under no necessity of buying. When such predicate is laid, we think evidence of the price the owner paid for the property is admissible as tending to reflect on the reasonable market value at the time of the taking. Until such predicate is laid, the evidence is not admissible. As to how recent or how remote in point of time such purchase of the property occurred, the more remote in point of time of the purchase, the less likelihood the admissibility of the purchase price—and the more recent the purchase, the more likelihood the admissibility of the evidence. The trial judge has and should have broad, but not unlimited discretion, in determining the admissibility of evidence of the price the owner paid for his property, under the foregoing rules. Should the evidence be inadmissible upon application of the foregoing rules—but be erroneously admitted, one resulting vice is the influence of such on the jury to place a value on the owner's property below market value simply because the owner acquired it at a price considerably lower." (Citing cases).

Appellee's position is that since Gomez Leon was allowed to testify on direct examination that he had bought the property because it was right across the street from Texas Western College and he had figured that the only place the college could grow was toward his property, the State should be allowed to show the original purchase price, not as a comparable sale, but in order to

prove that the area had not changed appreciably since the purchase. The testimony was:

"Q. I see, so it is your testimony that actually it was about, it cost you about $800.00?

A. Yes, somewhere around there.

Q. And, of course, that was over ten years ago, wasn't it?

A. Eighteen, twenty years ago.

Q. I see, now, then, actually, Mr. Gomez-Leon, has the area where your property is located, changed practically at all, right around your area?

A. Well, it wasn't much land left there, it's industrial zone there, and the Globe-Milles is right behind it.

Q. I understand, but the land around where your place is practically hasn't changed at all since that time has it?"

Appellee maintains that if it were error to admit such testimony for the stated purpose, it was harmless error. At this point we should state that in the Thompson case, relied on by appellants, the court further observed:

"We recognize that there are cases in which evidence of the amount of money the owner paid for the property is erroneously admitted, but by reason of the amount of the award, and the other evidence of market value at the time of the taking, in the record, such error is deemed harmless."

We believe this to be the case here, since Gomez Leon testified that he had paid about $800.00 for the land in question in 1951, whereas the award of the jury was $3,377.10, over four times the purchase price. Furthermore, the Texas Supreme Court, in Dennis v. Hulse, 362 S.W.2d 308, 309 (1962) has held:

"* * * Under our practice an appellate court is not authorized to reverse merely because the record discloses some error that is reasonably calculated to cause a miscarriage of justice. The party appealing must also show that it *probably did cause* the rendition of an improper judgment in the case. Rules 434 and 503, Texas Rules of Civil Procedure." (Emphasis supplied).

It cannot be held here that the questioning on the part of the State probably did cause the rendition of an improper judgment. Nor is our opinion in this respect altered by the appellants' recently cited case of Ludlam v. State, 405 S.W.2d 139 (Tex.Civ.App., 1966; n. w. h.), which recites at page 141:

"* * * It is well settled that the price paid for the land ten years before the taking is *not admissible on the issue as to the value of the property at the time of the taking*—State of Texas v. Curtis et al. Tex.Civ.App., 361 S.W.2d 448—and we cannot say in view of all of the evidence in the case that such evidence was not harmful to appellants and for this error the judgment of the trial court is reversed and the cause remanded for another trial." (Emphasis supplied).

In the case before us, the State made it clear in quoted testimony that the purchase price of appellants' property was not elicited in an attempt to show value of the property at the time of taking, but merely to show that there had been no tremendous increase in the value of the property taken from 1951 to the date of taking. Thus we conceive the Ludlam case to be distinguishable from the case before us. The first point of error is overruled.

■ Points of Error Nos. II, III, IV, V and VI relate to alleged errors on the part of the court in admitting so-called incompetent testimony. Points Nos. II, III and IV relate to the testimony regarding the price the College was paying for adjacent property, which allegedly was inadmissible since the College was an agency with con-

demnation powers and therefore such sales were in the nature of forced sales and not admissible on the issue of fair market value; that this incompetent testimony together with the testimony of "noncomparable" sales, such as the original sales price, resulted in reversible error. As to the first objection, appellants point to the testimony of Clyde Lyons, an appraiser presented by the State who, on voir dire examination, testified:

"Q. Number 1, is Texas Western College, to your knowledge, a branch of the University of Texas?

A. Yes, sir.

Q. Under the direction of the Board of Trustees of the University of Texas?

A. Yes, sir.

Q. And this is a State Agency?

A. Yes, sir, to my knowledge.

Q. And subject to the right of Eminent Domain, is that correct?

A. To my understanding, yes, sir,

Q. Has that right to take that property, just like the State, the Highway Department, is taking it?

A. Yes, sir.

Q. And the sales that you are going to testify to are to this particular Texas Western College?

A. To Texas Western College, that is correct.

Mr. Armendariz: If the Court please, I renew my objection."

And on cross-examination, testified as follows:

"Q. I submit to you that on your report, the main report you made on this, you had nothing of Texas Western [College] sales and purchases, is that correct?

A. No, sir, that is not correct."

Appellants then cite State v. Curtis, 361 S.W.2d 448, 450 (Tex.Civ.App., 1962; ref., n. r. e.), which recites:

"Another element of the required similarity is that the comparable sales must be between a willing seller and a willing buyer. A purchase by a condemning authority is not free and voluntary."

The State in the instant case defends the introduction of "College sales" on the statement of counsel for appellants during the trial: "If the Court please, if counsel has such a sale from the college, maybe he can introduce it". This statement was made during the cross-examination by State's counsel of appellants' appraisers, and after it was made it was followed by this colloquy:

"Q. (By State's counsel) All right, sir, we'll introduce the college sale, counsel has asked for it and we will introduce it, yes, sir. Since counsel said that I'll ask you, do you know that the college is paying about 9¢ a square foot for that property within 100 foot of this property?

Mr. Armendariz: If the Court please, that is not what I asked for. If he's got any such sales and it's subject to the ruling of this Court, then for goodness sakes present them. He has already said he doesn't know of any.

Mr. Arnold: I may add—

Mr. Armendariz: He is badgering the witness and—

Mr. Arnold: counsel asked me to do it, then I'm going to ask the witness if he knows, and then I will present them when my time comes.

Mr. Armendariz: He's already answered that.

The Court: I'm going to sustain the objection."

Appellants' counsel then moved for a mistrial, the ruling on which was held in abey-

ance and the motion later renewed, at which time no ruling was made, but the State was allowed to proceed with testimony on College sales. In the state of this record it is most difficult to evaluate the possible harmful effect of this testimony, but taking into consideration that testimony concerning College sales was apparently invited and that the jury awarded appellants 30¢ per square foot of property, as against a lesser amount involved in the so-called College sales, we hold that the testimony admitted probably did not cause the rendition of an improper judgment in the case, and so overrule Points of Error Nos. II, III and IV.

■ The fifth point of error asserts error of the court in allowing the State to prove its case of market value by evidence prejudicial to appellants' right to be fairly compensated even though the objections of appellants or lack of objections to some of the evidence might be deemed untimely. Appellants argue that the rulings of the trial court on the admissibility of evidence amounted to fundamental error in allowing the State to appropriate the property of appellants without "adequate compensation", in violation of rights reserved to appellants as property owners in Article I, Section 17 of the Texas Constitution, Vernon's Ann.St. and Amendments V and XIV of the United States Constitution. In our view of the record, no such fundamental error is shown, and we overrule this point of error.

The sixth point of error further claims that "reversible error was committed by counsel for the State in his deliberate questioning of witnesses on matters which he knew to be of an inadmissible character and of a prejudicial effect and which was likely to cause and probably did cause the jury to render an improper verdict." This seems to be largely reiterative of the matters presented under the fourth point of error and requires no further discussion. The sixth point of error is overruled.

■ Points VII, VIII and IX relate to the refusal of the court to submit to the jury an issue on the value of improvements to the land as requested by appellants' counsel and to the submission of only one issue as to damages with no issue as to the value of improvements, thus depriving appellants of their constitutional rights under the Texas and United States constitutions. The sole issue submitted in the case before us was as to the value of the property taken with instruction that "the value of the buildings or other improvements on the land in question must be considered only to the extent that they enhance the value of the land to which they are affixed." Appellants center their complaint on the use of the word "only" in the above instruction, and state that it is violative of the holding in the case of Lower Nueces River Water Supply District v. Sellers, 323 S.W.2d 324 (Tex.Civ.App., 1959; ref., n. r. e.). The cited case holds, at pages 330 and 331:

"In the instant case most of the witnesses valued the land separately from the improvements and valued each item of the improvements separately. This was necessarily so because some of the witnesses were qualified to testify as to the value of land, but not of buildings and other fixtures, while other witnesses were qualified to testify as to the value of the buildings, but not as to the value of farm land. While these separate values on improvements are admissible in evidence in arriving at the compensation, the improvements on the land taken are to be considered a part of the realty. They ordinarily have no market value separate from the land, and when considered in arriving at the amount of compensation or damages, improvements can only be considered to the extent that they add to, increase, or enhance the value of the land. Nowhere in the court's instructions was the jury advised that the consideration of the improvements should be so limited. It is common knowledge that the amount improvements will in-

crease or enhance the market value of land upon which they are situated will depend upon the location and use of the land, as well as the kind of improvements, the use for which they are suitable, their cost in relation to the value of the land, and many other factors. We think this erroneous instruction was calculated to and probably did cause the jury to improperly determine the value of the 'property' inquired about in said issue and thus led to an improper verdict and judgment."

It is thus seen that the cited Sellers case endorses the instruction as given in this case. Furthermore, the appellants' testimony as to the value of the buildings is as follows: The appraiser for appellants stated:

"Q. Is it your opinion that the building contributed nothing to the value of the land?

A. Well, it was bringing $80.00 a month. It contributed that—it was a grocery store at one time—so I wouldn't say contributed nothing, but the building was a mess as far as that was concerned, it was very dilapidated.

Q. All right, was it dilapidated at the time you looked at it?

A. Yes, sir. First time, yes, sir.

Q. The first time, and when was that?

A. Well, it was probably close to two years ago.

Q. And it was dilapidated even two years ago?

A. Yes, sir, it was my understanding that it was vacant at that time— I didn't try to get in.

Q. I see, and you just looked on the outside?

A. Yes, sir, that's right.

Q. And so, then, we will say, am I correct in saying appraisalwise you put no value on the building, just on the land?

A. Yes, sir."

Appellant Gomez Leon testified:

"Q. All right, did you in any way in setting your price of $18,000.00 on the property, separate the cost of the improvements from the land— * * *

A. No, I didn't.

Q. You just think its worth $18,000.00 together?

A. Yes."

The State's appraiser had seen the property previously, and testified:

"A. On this particular property, Mr. Armendariz, that I had seen up there, there was no evidence of there being a grocery store at the time I saw this property; there was no evidence at the time I saw the property, when I visited this area, as a Commissioner, there was no evidence to me that it was even rented and it contributed nothing as far as I was concerned."

So there would have been no testimony to support appellants' contention here. Points VII, VIII and IX are overruled.

Point of Error No. X reads:

"THAT THE CUMULATIVE EFFECT OF THE FOREGOING AND OTHER ERRORS COMMITTED DURING THE TRIAL DEPRIVED APPELLANT OF HIS RIGHT TO BE ADEQUATELY COMPENSATED FOR HIS PROPERTY."

Since we have found no harmful error in this record, it is obvious that this point must be, and is hereby, overruled.

The judgment of the trial court is affirmed.