**Armando GOMEZ LEON et ux., Petitioners,**

**v.**

**The STATE of Texas, Respondent.**

**No. B–541.**

Supreme Court of Texas.

April 3, 1968.

Rehearing Denied May 1, 1968.

---

Albert Armendariz, El Paso, for petitioners.

Crawford C. Martin, Atty. Gen., Watson C. Arnold, Asst. Atty. Gen., Austin, for respondent.

CALVERT, Justice.

This is a condemnation case in which The State of Texas seeks to condemn 11,-257 square feet of land, owned by Armando Gomez Leon and wife and situated in El Paso, Texas, for highway purposes. Special Commissioners awarded the owners $6,685, to which award the State filed its objections. The State deposited the amount of the award in the registry of the court and it was withdrawn by the owners. In a trial in the County Court at Law of El Paso County, a jury found the reasonable market value of the property on March 1, 1965, the date of the taking, to be $3,377.-10. The trial court rendered judgment awarding the State fee simple title to the property and a recovery from the owners of $3,307.90, with six per cent interest on that sum from March 1, 1965. The court of civil appeals has affirmed. 418 S.W.2d

544. We reverse the judgments of the courts below and remand the cause to the trial court for retrial.

Leon and wife were appellants in the court of civil appeals. They had ten points of error in that court. All were overruled. Rulings on only two of the points are brought here for review.

By their first point petitioners complain of the failure of the court of civil appeals to reverse the judgment of the trial court because that court erroneously permitted the State to prove the amount paid for the property by Leon when he bought it some 14 to 18 years before the date of taking. The court of civil appeals held that the trial court erred in admitting the evidence but that the error did not require reversal.

Leon was the first witness to testify. He testified, without objection, that his property was worth $18,000, and that he bought the property some time prior to October 18, 1951, the date of his deed. On cross-examination he was required, over objection, to tell the jury what he paid for the property. He testified to a price of $800. Recognizing that the ruling of the trial court would have been erroneous in normal circumstances because of remoteness of the transaction, State v. Curtis, 361 S.W.2d 448 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.); Scott v. McLennan County, 306 S.W.2d 943 (Tex.Civ.App. —Waco 1957, writ ref'd n. r. e.), the State contends that it was not erroneous in this case because of other testimony given by Leon on direct examination.

One of the reasons given by Leon on direct examination for placing a value of $18,000 on the property was that it was near the campus of The University of Texas at El Paso which was expanding; and that the campus could be expanded farther in only one direction and that was toward his property, thus enhancing its value. The State contends that this testimony made evidence of the price paid for the property by Leon admissible to show "that the area around the property had not

changed" since 1951. That fact—if it be a fact—was easily susceptible of proof without inquiring as to the amount paid for the property. The ruling of the trial court in admitting the testimony was erroneous.

■ In their second point of error petitioners complain of the failure of the court of civil appeals to reverse the judgment of the trial court because the State's expert witness was permitted to testify, as a basis for his appraised value and over strenuous objection by petitioners' counsel, to prices paid for property in the area by The University of Texas at El Paso. The State contends that admission of the testimony was not erroneous because its admission was invited by counsel for the Leons. We must first go to the record to decide whether the testimony was invited.

Petitioners' expert witness was asked on cross-examination if he thought the University had been "paying anywhere near" the value he had placed on the subject property "for that land in there." The witness answered, "I don't know." Counsel for the State continued to press the witness on the subject of sales to the University. Asked if he had stated that one of the things "that made this property valuable" was the fact that "some day the college will take it," the witness answered: "Yes, sir, there are innumerable uses that this land could be put to by college or by anyone that wanted to use it." The State's counsel thereupon put his next question thusly: "But yet you say that out of one side of your mouth, but you never tell this jury what the college is paying for any of that land, do you?" The witness answered, "No, sir, I didn't know, I didn't look it up." Counsel for the State then began a rather lengthy question, obviously argumentative and objected to on that ground. The court sustained the objection. Petitioners' counsel then stated: *"If the court please, if counsel has such a sale from [to] the college maybe he can introduce it."* [1] Thereupon counsel for the

State introduced his next question and put the question in this language: "All right, sir, we'll introduce the college sale, counsel has asked for it and we will introduce it, yes, sir. Since counsel said that I'll ask you, do you know that the college is paying about 9¢ a square foot for that property within 100 foot of this property?" Petitioners' counsel interjected: *"If the court please, that is not what I asked for. If he's got any such sales and its subject to the ruling of this court then for goodness sakes present them.*" He has already said he doesn't know of any." Counsel for the State answered: "Counsel asked me to do it, and I am going to ask the witness if he knows, and then I will present them when my time comes." At a later stage of the trial, the State's expert witness was permitted, over petitioners' objection and as a basis for his opinion that the subject property had a value of 15¢ a square foot, to testify to five sales of property to the University. Three of the sales were for 9¢ a square foot, one was for 13½¢ a square foot, and one was for 22¢ a square foot.

On the basis of the foregoing examination of the circumstances surrounding admission of the testimony, we hold it was not invited. The State says the two statements by petitioners' counsel which we have emphasized constituted an invitation. We do not agree. The first statement was that if State's counsel had evidence of a sale to the college, "maybe" he could introduce it. Then when State's counsel asked the witness if he knew that "the college had been paying about 9¢ a square foot," petitioners' counsel said, in effect, that if counsel for the State had evidence of any such sales he should present them "subject to the ruling of this court" on their admissibility. As we interpret the two statements, they were nothing more than a qualified invitation to State's counsel to offer evidence of sales to the University, if any he had, and he could introduce it if in the face of objection the court held it admissible.

1. Emphasis ours throughout unless otherwise indicated.

Objection to the testimony of the State's expert witness as to sales made to the University should have been sustained. Our courts have consistently held that proof of sales of property to a corporation or a governmental agency having power of eminent domain is not admissible in a condemnation suit. As examples, see State v. Curtis, 361 S.W.2d 448 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.); Menchaca v. San Antonio Ind. Sch. Dist., 297 S.W.2d 363 (Tex.Civ.App.—Waco 1956, writ dism'd). The reason for excluding proof of such sales is that they do not meet the willing seller-willing buyer concept; they are made under a direct or an implied threat of condemnation and, theoretically at least, are not free and voluntary. State v. Curtis, supra. There is even less reason for permitting an expert witness to consider such sales in arriving at an opinion as to the value of property being taken through condemnation and to testify to the prices paid. The rule of State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207 (1962) cannot thus be expanded to get inadmissible value evidence before a jury.

Having held that the trial court erred in admitting testimony of the price paid by petitioners for the subject property and of prices paid by the University for other property in the area, the final question to be decided is whether admission of the testimony was prejudicial error. The question is governed by Rules 434 and 503, Texas Rules of Civil Procedure, which provide: " * * * no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that an error of law has been committed by the trial court in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant [petitioner] as was reasonably calculated to

cause and probably did cause the rendition of an improper judgment in the case * * *." Whether particular error was "reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case" is always a judgment call to be made according to the reviewing court's "opinion" from a review of the entire record in the case. Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191 (1949).

It is our opinion that the two errors require a reversal; that it is more likely than not that the inadmissible testimony caused the jury to place a lower value on the property than it would otherwise have placed thereon. Both errors bear directly on the issue of value, the only issue in the case. Leon testified that the property had a value of $18,000. Petitioners' expert witness testified to a value of $19,699.75 or $1.75 a square foot. The State's only witness, an expert, testified to a value of 15¢ a square foot, rounded off to $1,700. As a basis for his valuation, the witness testified to four sales to purchasers not having eminent domain power. One was for 35¢, one was for 47¢, one was for 52¢, and one was for 38½¢ a square foot. The witness admitted considering the sales to the University as comparable sales in arriving at his valuation of 15¢ a square foot. The jury fixed the value of the subject property at $3,377.10, or approximately 35¢ a square foot, the lowest value equivalent of admissible comparable sales used by the State's expert. While the jury obviously did not fix a value on the subject property as low as the price paid for the property or as low as the prices paid by the University, we are satisfied that its answer to the special issue was influenced by this testimony.

The judgments of the courts below are reversed and the cause is remanded to the trial court for a new trial.