Bill J. MULLINS, Appellant,

v.

S. Willard ELIESON, Jr., et al., Appellees.

No. 9195.

Court of Civil Appeals of Texas, Amarillo.

Jan. 28, 1981.

Thomas J. Griffith, Ralph H. Brock, Lubbock, for appellant.

Jones, Trout, Flygare, Moody & Brown, James C. Lewis, McCleskey, Harriger, Brazill & Graf, Mike Worley, Lubbock, for appellees.

REYNOLDS, Chief Justice.

This appeal is from a judgment, rendered on a jury verdict, fixing the amount of 1976 income tax liability pursuant to a written contract. We are called upon to determine whether the court reversibly erred (1) in admitting evidence of carryback loss credits from tax returns for subsequent years to offset the amount of the 1976 tax, and (2) in overruling a motion for judgment non obstante veredicto for the amount of contractual tax liability shown from the 1976 tax data. Determining that perforce the contract, the first question must be answered in the affirmative and the second in the negative, we reverse and remand.

Bill J. Mullins, Donald W. Andress and John A. Hall, Jr., were partners in Western Associates, a partnership, and shareholders in Western Associates, Inc., a corporation. The termination of their business relationships and vesting of the business interests were evidenced by a written purchase agreement and partnership dissolution agreement, also executed by S. Willard Elieson, Jr., individually, by Western Associates, Inc., and by Texas Commerce Trust Company acting through Elieson and Hall as officers. The contract scheduled the vesting of the business interests in exhibits.

Exhibit A listed the property Andress and Hall were to transfer to Mullins, which included all stock in Mullins Oil Company and $100,000 cash; Exhibit B listed the property Mullins was to transfer to Elieson, Andress, Hall and Texas Commerce Trust Company; and Exhibit C listed the obligations to be paid in full by Western Associates, Inc.

Paragraph 8 of the contract, executed 29 October 1976, gave rise to this litigation. The paragraph reads:

8. All partnership relationships heretofore existing between Andress, Hall and Mullins shall be dissolved as soon as reasonably practicable following the execution of this contract. Elieson, Andress, Hall and Trust Company shall be responsible for the preparation of the final partnership return on any partnerships dissolved pursuant to this agreement and a copy of said return shall be furnished to Mullins for his use in the preparation of his personal income tax return for 1976. It is agreed that Elieson, Andress, Hall and Trust Company shall be responsible for all accounting services necessary to account for any income tax liability arising in the operation of any business entity covered by this agreement prior to the date of the execution of this contract as well as any income tax consequences of this transaction, and if it should be determined from the accounting services furnished by said parties that Mullins is required to assume any income tax liability over and above that which he would have been required to pay for the first ten months of 1976 except for this transaction (and excluding any income tax liability arising from the cash paid to Mullins as shown in Exhibit "A") then Elieson, Andress, Hall and Trust Company agree to pay any such additional tax liability of Mullins.

The litigation was commenced in April of 1978 when Mullins filed suit demanding, *inter alia*, that Elieson, Andress, Hall and Texas Commerce Trust Company furnish him the data to prepare his personal 1976 income tax return. By his amended, live

trial pleadings, Mullins sought monetary damages for breach of contract.[1] The defendants answered, all but Hall interposing various affirmative defenses.[2]

During the jury trial in June of 1979, testimony was adduced showing that the tax information was secured in February or March of 1979. Thereafter, Mullins filed his 1976 income tax return reflecting a $164,054.69 tax liability, $117,395.58 of which the accountant calculated to be the additional tax liability produced by the contractual transaction. The return valued the stock of Mullins Oil Company at $172,210.51 more than the stock had been sold for at the time the return was filed.

Near the filing time of Mullins' 1976 return, his 1977 and 1978 income tax returns were filed. Over Mullins' objections, the defendants were permitted to introduce proof that there was a pending adjustment for offsets to the reported 1976 tax liability for "net operating loss carrybacks," a portion of which was the $172,210.51 loss from the 1978 sale of the Mullins Oil Company stock, from the subsequent tax years of 1977 and 1978. The offsets, pending completion by Internal Revenue Service, resulted in an outstanding liability for 1976 of approximately $7,400, all of which constituted an assessment for interest, not tax.

By their answers to special issues not later disregarded by the trial court as immaterial, the jury rejected the defendants' affirmative defenses and, in response to special issue no. 1, fixed Mullins' 1976 tax liability attributable to the transaction at $7,500.[3] Mullins moved the court to disregard the jury's special issue no. 1 finding on the ground of no evidentiary support and to

render judgment non obstante veredicto awarding him a recovery of $117,395.58. The motion was overruled and judgment was rendered decreeing that Mullins recover the sum of $7,500 from Elieson, Andress and Texas Commerce Trust Company.

Appealing, Mullins seeks a reversal and rendition with contentions that the trial court reversibly erred in admitting the objected-to evidence and in overruling his judgment n. o. v. motion. Elieson, Andress and Texas Commerce Trust Company, as defendant-appellees, contest the validity of the contentions in asking for an affirmance, even though they suggest their adjudged liability is negated by the uncontroverted evidence and their liability under the contract, or, alternatively in the event of error, for a remand. Mullins' contentions will be considered separately.

First, Mullins contends that the court erroneously admitted over his objections the evidence of the pending adjustment to his reported 1976 income tax liability resulting from the loss carrybacks from the subsequent tax years of 1977 and 1978. This contention necessitates an initial determination of the contractual obligation undertaken by defendant-appellees, i. e., the construction of the portion of paragraph 8 articulating their obligation in these words:

> . . . and if it should be determined from the accounting services furnished by said parties that Mullins is required to assume any income tax liability over and above that which he would have been required to pay for the first ten months of 1976 except for this transaction (and excluding any income tax liability arising from the

1. As we read his pleadings, Mullins did not specifically seek a determination of, or a recovery for, his additional tax liability generated by the transaction as provided in paragraph 8 of the contract; however, inasmuch as an issue thereon was submitted to and answered by the jury to form the basis of the judgment, the parties are deemed to have consented to the trial of the issue. Tex.R.Civ.P. 67.

2. During the trial, Hall was severed from the action after involuntary bankruptcy was filed against him, and he is not a party to the judgment or to this appeal.

3. Special issue no. 1 and the jury's answer are as follows:

What do you find from a preponderance of the evidence was the liability of Mullins which was over and above his tax liability had he not entered into the contract of October 29, 1976, excluding from consideration his income tax liability upon the $100,000.00 cash paid to Mullins?

Answer in dollars and cents, or none, as you may find.
ANSWER: $7,500.00

cash paid to Mullins as shown in Exhibit "A") then Elieson, Andress, Hall and Trust Company agree to pay any such additional tax liability of Mullins.

Without either pleading or contending that the contract is ambiguous, the litigants assign different meanings to the liability obligation. Mullins argues that defendant-appellees contracted to indemnify him against his additional 1976 income tax liability; defendant-appellees argue that their contractual liability is to indemnify Mullins against loss. Stated otherwise, Mullins says that under the contract, he is entitled to recover from defendant-appellees the income tax liability he incurred in the transaction as shown by his 1976 income tax return; defendant-appellees respond that they are contractually bound to pay only the amount Mullins is required to pay Internal Revenue Service as 1976 income tax because of the transaction.

■ There is, as the litigants agree, a pronounced difference between a contract to indemnify against liability, by which the obligation matures as soon as the liability is incurred, and a contract to indemnify against loss, by which the obligation matures when the loss is suffered. *Russell v. Lemons*, 205 S.W.2d 629, 631 (Tex.Civ.App. —Amarillo 1947, writ ref'd n. r. e.). Thus, if the contractual undertaking was one against liability, it signifies defendant-appellees' specific duty to protect Mullins from the accrual of liability; whereas, if the undertaking was one against loss, it amounts to defendant-appellees' guaranty of reimbursement upon payment by Mullins. The nature of the obligation undertaken is fixed by, and must be determined from, the terms of the contract. *Id.*

■ As noted, the litigants do not mention any ambiguity in the contract; they simply disagree upon the proper construction to be given the contractual undertaking. Absent an ambiguity, the construction to be given that undertaking becomes a matter of law for the court, *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 481 (Tex.1978), to be ascertained by the language the litigants used, *Tower Contracting Company v. Flores*, 157 Tex. 297, 302 S.W.2d 396, 399 (1957), which is deemed to express their intention. *Republic National Life Insurance Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963). In this connection, there is nothing in the contractual agreement to indicate an intention to attach any special meaning to the words and phrases employed; so, we apply the general rule that the words and phrases used by the litigants in their agreement will be given their ordinary and commonly accepted meaning. *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 366 (Tex. Civ.App.—Amarillo 1977), *aff'd* 569 S.W.2d 480 (Tex.1978).

A perusal of the agreement manifests that the real sense of the obligation undertaken is readily interpreted by interchanging the phraseological language used by the litigants in expressing it. The transposition discloses that

... Elieson, Andress, Hall and Trust Company agree to pay any such additional tax liability of Mullins that Mullins is required to assume for 1976.

■ But, by any view of the language in either the original or transposed version, it cannot escape notice that the litigants phrased the obligation to pay for such additional tax liability of Mullins as being that which Mullins is required "to assume," and not that which he is required "to pay." The phrase "to assume" has ordinary and commonly accepted meanings and, in the context of the contractual agreement, it means "to take upon oneself; to make oneself formally liable for." Webster's Third New International Dictionary. The meaning does not go so far as to imply, as does the phrase "to pay," the discharge of the obligation incurred. *Id.*

■ By giving credence to their language, the litigants intended that the contractual undertaking is an obligation to indemnify against liability and not against loss. As a result, the obligation undertaken by defendant-appellees matured at the incurrence of Mullins' additional tax liability for 1976, unaffected by subsequent tax

years adjustments and consequent payment, if any.

■ For this reason, the evidence of the amount Mullins is to pay Internal Revenue Service to discharge his 1976 income tax debt, adjusted for net operating loss carrybacks from future tax years, did not tend to prove or disprove the transactional tax liability Mullins is to assume for 1976. A taxpayer becomes liable for taxes reported as owing at the time the return is due and, if he fails to pay the taxes reported at that time, he is subject to pay interest thereon, even though the taxes ultimately may be offset by a loss carryback from a future tax year. *See, e. g., Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950). It follows that the adjustment evidence is neither relevant nor material to the issue of the liability which is indemnified, and it should have been excluded. *See, e. g., Dallas Railway & Terminal Company v. Oehler*, 156 Tex. 488, 296 S.W.2d 757, 759 (1956). Its admission, therefore, was error, and Mullins' objections on the grounds the evidence was irrelevant and immaterial, albeit general objections, were sufficient to preserve the right of review of the error in admitting it. *Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366, 368 (1962).

■ Having held that the admission of the evidence was error, the next determination is whether it is reversible error, a determination to be made from a review of the entire record. *Gomez Leon v. State*, 426 S.W.2d 562, 565 (Tex.1968). The record manifests that the evidence placed before the jury the erroneous concept that the additional tax liability Mullins is to assume for 1976 is the amount he is required to pay Internal Revenue Service after adjustments from subsequent tax years. Testimony is harmful if it places before the jury an erroneous theory of recovery. *State v. Walker*, 441 S.W.2d 168, 174 (Tex.1969). Furthermore, in the state of the proof, it is apparent that the jury gave controlling effect to the evidence in arriving at its $7,500 finding. When a jury bases its decision upon inadmissible evidence, it causes the

rendition of an improper judgment. *American Gen. Ins. Co. v. Jones*, 152 Tex. 99, 255 S.W.2d 502, 505 (1953). Accordingly, our review convinces us that the error in admitting the evidence was such error as was reasonably calculated to cause and probably did cause the rendition of an improper judgment, thereby dictating a reversal of the judgment rendered. Tex.R.Civ.P. 434.

■ By the reversal, we reach Mullins' second contention. He contends the court reversibly erred in overruling his motion for judgment non obstante veredicto because he proved as a matter of law that the contractual liability was $117,395.58. The contention can be sustained only if the evidence is conclusive that no other verdict can be rendered. *Dittberner v. Bell*, 558 S.W.2d 527, 531 (Tex.Civ.App.—Amarillo 1977, writ ref'd n. r. e.). We do not consider the evidence to be so conclusive.

■ Ray Wood, the certified public accountant who prepared Mullins' tax returns, testified that Mullins' reported 1976 income tax liability included $117,395.58 attributable to the transaction. Mullins maintains that because defendant-appellees selected Wood to prepare the tax returns for the partnership and the corporation, were contractually responsible for all accounting services necessary, and did eventually provide the information for Wood's computation of his 1976 income tax liability, they are bound by Wood's calculations. Defendant-appellees are quick to point out that Mullins was Wood's client prior to the execution of the contract, Mullins acknowledged that Wood was his accountant, Mullins selected Wood to prepare his tax returns, and Mullins called Wood as a witness. Therefore, they conclude, it was Mullins who vouched for his credibility and is bound by his testimony. We agree, but as we review the record, we see nothing to change the general rule that the testimony of one's witness may be contradicted by independent facts showing its falsity or inaccuracy. *Travelers Ins. Co. v. Blazier*, 228 S.W.2d 217, 219 (Tex.Civ.App.—Fort Worth 1950, writ dism'd). Be that as it may, Mullins misconstrues both defendant-appellees' con-

tractual accounting responsibility as it pertains to his additional income tax liability and the extent of their liability.

Contractually, defendant-appellees were responsible for the preparation of the final partnership return, a copy of which was to be furnished Mullins "for his use in the preparation of his personal income return for 1976," and for all accounting services necessary to account for any income tax liability from any involved business entity prior to the date of the contract. Their responsibility did not extend to either the preparation or the accuracy of Mullins' tax return.

■ Also contractually, defendant-appellees were bound to pay the transactional tax liability that Mullins is required—i. e., compelled, Webster's Third New International Dictionary—to assume. In brief, the defendant-appellees' obligation is to pay the amount for which Mullins is compelled to be formally liable for 1976, not necessarily the amount of liability he may report for that year. As a corollary, defendant-appellees have the right to proof of their liability.

Given this setting, a consideration of the record is continued. Wood further testified that the 1976 return was prepared from figures furnished him by Mullins. The return valued the assets of Mullins Oil Company, which had been sold before the return was prepared, at $172,210.51 more than the sale price. Included in the return were amounts pertaining to a debt, an escrow account and cash which had been allocated to defendant-appellees by the contractual schedules. Additionally, the return shows Mullins' corporation salary to be almost $10,000 less than Mullins testified he was paid. Wood conceded that if the debt, escrow and cash items should not have been included in the return, or the value for Mullins Oil Company's assets or Mullins' salary figure was incorrect, the tax liability would be different from that he calculated.

■ Perhaps even more indicative of the controverted facts are Mullins' alternative prayers for judgment non obstante veredicto. He submits that if he be in error

in asserting that Wood's testimony is not subject to examination, and if we find any items were improperly included in Wood's computation, then we should render judgment for one of four other amounts of liability computed according to which item or items we find should be excluded from the tax return. This we may not do. Contrary to Mullins' statement that Wood's examination raises only questions of contract construction which is to be decided as a matter of law, the challenged correctness of the tax return entries by evidence conflicting therewith presents questions of fact. The contradictory facts may not be resolved on appeal, for we have no jurisdiction to make original findings of fact. *Wisdom v. Smith*, 146 Tex. 420, 209 S.W.2d 164, 166 (1948). It is only when the evidence is harmonious and consistent, and the circumstances permit but of one conclusion, that the question becomes one of law for determination by the court.

■ It is at once apparent that some verdict other than one for a $117,395.58 transactional tax liability can be rendered on the conflicting and contradictory evidence. Hence, Mullins failed to prove that he was entitled to judgment non obstante veredicto for this amount, and the court did not err in overruling his motion therefor.

■ Although we have held it was reversible error to admit evidence of the amount of 1976 income tax that ultimately may be paid because of a pending adjustment from future tax years, it should be observed that the holding does not bar the admission of any evidence which is competent, relevant and material to a determination of the transactional income tax liability Mullins is compelled to assume for 1976. Even evidence of a transaction arising after the due date of the 1976 return is admissible if it tends to prove or disprove the amount of such liability or sheds light on the question. *Accord, Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 700 (1941).

Mullins' first point of error is sustained; his second point is overruled. There being reversible error in the judgment, justice

prescribes a remand so that the liability which is indemnified may be ascertained under the correct theory. *Morrow v. Shotwell*, 477 S.W.2d 538, 541–42 (Tex.1972).

The judgment is reversed and the cause is remanded.