Edwin E. FOSTER, Appellant,

v.

W. H. BULLARD et al., Appellees.

No. 11997.

Court of Civil Appeals of Texas,
Austin.

June 13, 1973.

Rehearing Denied July 11, 1973.

Joe A. Osborn, Kendall, Randle, Finch & Osborn, Austin, for appellant.

J. P. Darrouzet, Sneed, Vine, Wilkerson & Selman, Verne D. J. Philips, Austin, for appellees.

O'QUINN, Justice.

Edwin E. Foster, the appellant, brought this suit to enforce the terms of a first refusal option agreement, made with W. H. Bullard to purchase fifty acres of land out of the James Standifer Survey west of Austin near Barton Creek.

Foster sued Bullard individually and Casa Monte Company, which Bullard and his wife owned and by which entity title was held, and also sued Mutual Savings Institution, to whom Bullard sold the land, as well as the Capital National Bank in Austin, in its capacity as Independent Executor and Trustee under the will of Helen G. Bullard, deceased, who while living was the wife of Bullard.

The defendants filed motions for summary judgment, which the trial court granted and, by judgment entered June 21, 1972, decreed that Foster take nothing by his suit.

The principal issue on appeal is whether the trial court by implication correctly held that description of the fifty acres in the option contract was insufficient under provisions of the Texas statute of frauds, Business and Commerce Code, sec. 26.01 (Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785 sec. 1; V.T.C.A., Bus. & C. sec. 26.-01).

We will reverse the judgment of the trial court and remand the cause for trial.

The record on appeal contains extended stipulations of the parties, four oral depositions, interrogatories, and affidavits and exhibits which the trial court considered in connection with the motion for summary judgment.

Bullard and his wife, as owners of all the stock of Casa Monte Company, a corporation, owned Casa Monte Ranch, consisting of several contiguous tracts of land in Travis County and containing about 2,460 acres. Bullard, as president of the corporation, acted for the company in all transactions with Appellant Foster and in all matters leading to and culminating in sale of the ranch to Mutual Savings Institution.

Title to the parcels of land involved in this suit was gained through a deed, dated January 30, 1953, describing 197.3 acres in two tracts, this acreage being the most southerly part of Casa Monte Ranch. One of the grantors was David L. Tisinger, Trustee, and the instrument for convenience will be called sometimes the "Tisinger deed." The "First Tract" was described in the deed as containing 117.3 acres, out of the Eanes and Fessenden Surveys with metes and bounds set out. The "Second Tract" was described as containing eighty acres, more or less, located within the James Standifer Survey No. 100, with metes and bounds set out. The two tracts were contiguous, the "Second Tract" of eighty acres being the most southerly part of the 197.3 acres conveyed by the Tisinger deed.

Bullard, acting for Casa Monte Company, entered into a contract on March 1, 1967, with Appellant Foster for the sale to Foster of thirty acres out of the Second Tract described in the Tisinger deed, and granting to Foster a first refusal right to buy the additional fifty acres "immediately north of . . . (the 30-acre tract) to the extent of a total of 80 acres, being the above 30 acres and an additional 50 acres."

The material portions of the contract are quoted:

"1. Seller hereby agrees to sell to purchaser, and purchaser agrees to purchase from seller the following described property:

Thirty (30) acres of land out of the Casa Monte Ranch in Travis County, Texas, said land to be bounded on the East by the West boundary line of the

present W. A. Foster property, on the South by the South boundary of Casa Monte Ranch on the creek bluff above Barton Creek, on the West by the West boundary line of the 197.3 acre tract of Case Monte Company, and the North boundary line to be established by competent survey to include 30 acres of land; said North boundary to be at right angles to the W. A. Foster boundary.

"2. * * * *

"3. Seller agrees to pay for survey as above described to be prepared by Billy F. Priest, Licensed Surveyor.

"4. * * * *

"5. * * * *

"6. Seller agrees to give the right of rejection of additional land immediately North of the land above described to the extent of a total of 80 acres, being the above 30 acres and an additional 50 acres. If seller has a bona fide offer to dispose of such additional land, he shall be obligated to offer the additional acreage to purchaser for a period of ten (10) days at a price consistent with the other offer, but not less than $750.00 per acre."

The "W. A. Foster property" mentioned in the contract referred to a tract adjoining Casa Monte Ranch on the east, owned by Appellant Foster's son.

Pursuant to paragraph 3 of the contract, Bullard engaged B. F. Priest, a licensed surveyor, in April of 1967 to make the survey. Bullard supplied Priest with a copy of the Tisinger deed of January 1953 for the 197.3 acre parcel and instructed Priest to survey the eighty acres ("Second Tract" in the deed) and to "cut off 30 acres from the south end." Following instructions, Priest surveyed the eighty acres described in the Tisinger deed, which Priest found to contain 77.96 acres. Priest located and established a line that would cut off thirty

acres from the south end and set pipes for markings at the northwest and northeast corners of the thirty-acre tract.

The southern boundary of the eighty-acre tract was along bluffs above Barton Creek, and the south corners were established from locations made previously by Marlton O. Metcalfe, Travis County Surveyor, for Appellant Foster in connection with his acquisition in 1956 of a tract of 99.8 acres in the Rozier Survey No. 77, adjoining the eighty-acres on the east. The southern boundary of the eighty acres, along the bluffs above Barton Creek, was affirmed in July of 1967 in a boundary deed between Casa Monte and the owners of the Taylor Gaines ranch adjoining the eighty-acre tract on its south. After acquiring the 99.8 acres in the Rozier Survey, Appellant Foster sold the west 50.46 acres of the tract, through the Veterans' Land Board to his son W. A. Foster, and this tract is referred to in the contract set out above as adjoining the Bullard property on the east. Priest testified by deposition that the west boundary of the eighty-acre tract ("Second Tract" in the Tisinger deed), from the northwest corner of the thirty acres Priest cut off to the northwest corner of the eighty acres, followed an old fence and that it was the only fence he found in the area.

The line drawing inserted here, which is diagrammatic and not made to scale, illustrates the arrangement and relation of the several tracts under discussion. The "First Tract" (117.3 acres) and the "Second Tract" (80 acres) comprise 197.3 acres described and conveyed in the Tisinger deed of 1953 to First Austin Realty Corporation, an entity owned or controlled by Bullard and through which Casa Monte later acquired title. The "Second Tract", described in the Tisinger deed as "containing 80 acres of land, more or less," is bisected by a dash line to illustrate the thirty acres Bullard sold to appellant, cut out by Priest at Bullard's behest from the south end of the "eighty acres."

"FIRST TRACT"

117.3 AC.

"SECOND TRACT"

[47.96 AC.]

80 AC.

[30 AC.]

W.A. FOSTER TRACT

ROZIER SUR.

[A7578]

BARTON CR.

The deed by which Appellant Foster acquired the thirty-acre tract was dated May 24, 1967, although the sale was not closed until July 21, 1967. This conveyance described the thirty acres as follows:

"30.00 acres of land, *being a portion of that certain 80.00 acre tract of land out of the James Standifer Survey No. 100* in Travis County, Texas, which was *conveyed to First Austin Realty Corporation by deed of record* in Volume 1317 at Page 134, Deed Records, Travis County Texas, *and described as Second Tract in said deed,* which tract of land containing 30.00 acres is more particularly described by metes and bounds as follows:

BEGINNING at an iron pipe *set* in the *east line as fenced* of the *said First Austin Realty Corporation tract,* and from which iron pipe a *concrete monument found at the northwest corner of the John P. Rozier Survey No. 77 in the east line of the James Standifer Survey No. 100,* bears N. 29 deg. 29′ E 381.20 feet; N 29 deg. 25′ E 444.45 feet; N 29 deg. 30′ E 280.70 feet, and N. 13 deg. 29′ E 5.90 feet;

THENCE *with the fence,* S. 29 deg. 29′ W 202.14 feet and S. 29 deg. 26′ W 648.07 feet to a corner fence post on top of the high bluff on the north bank of Barton Creek;

THENCE N. 50 deg. 20′ W, at 5.40 feet pass an iron stake, in all a distance of 1968.70 feet to an iron pipe in a rock mound on top of the high bluff on the north bank of Barton Creek, and on the west bank of a canyon;

THENCE *with an old fence* N. 32 deg 58′ E 489.66 feet to a point;

THENCE *with the fence* N. 30 deg. 54′ E. 16.54 feet to an *iron pipe* in a rock mound *set;*

THENCE S. 60 deg. 25′ E. 1907.03 feet to the point of BEGINNING. As surveyed by B. F. Priest, Reg. Public Surveyor on April 25, 1967." (Emphasis added)

In connection with the closing of the sale to Foster of the thirty acres the parties made an additional agreement, dated July 20, 1967, reaffirming Foster's first refusal purchase right, initially made March 1, 1967, to "the 50 acres immediately north of the 30 acres conveyed . . ." This agreement identified the contracting parties as they appeared in the deed to the thirty acres and restated the option agreement in the language quoted:

"This agreement made and entered into this 20th day of July, 1967 by and between Casa Monte Company, a Texas corporation, of Austin, Travis County, Texas, Grantor, and Edwin E. Foster, of Travis County, Texas, Grantee, in a certain warranty deed dated May 24, 1967, conveying 30 acres out of the James Standifer Survey No. 100 in Travis Volume —— Page —— Deed Records of Travis County, Texas, witnesseth:

"1. In connection with the 50 acres immediately north of the 30 acres conveyed to Edwin E. Foster, prior to sale of said 50 acres to any other purchaser upon a bona fide contract and offer, Casa Monte Company shall be obligated to offer said 50 acres to Edwin E. Foster at a price consistent with said offer, but not less than $750.00 per acre."

The following year, in 1968, Bullard's wife, who held half the stock of Casa Monte Company, died in August, and thereafter Bullard and the Capital National Bank, as executor of Mrs. Bullard's estate, determined that Casa Monte Ranch should be sold to facilitate meeting estate tax obligations. Concurrently with steps to sell the ranch, the process of dissolving Casa Monte Company was undertaken, and at the time a contract was made early in 1969 to sell the ranch, Bullard, individually, and the Capital National as executor became parties to the agreement.

Bullard authorized an agent to find a buyer for the ranch, and as a result of the agent's efforts an offer was made to Bullard by H. B. Hendrix early in January of 1969. By deposition Hendrix testified that he offered to pay $650 an acre for the ranch, estimated by Bullard to contain about 2,460 acres. The acreage was to be determined by a perimeter survey, and the purchase price of $1,600,000 would be adjusted for excess or deficiency at $650 per acre. Hendrix offered to place $25,000 in escrow at signing of the contract, with an additional payment of $135,000 to be made at closing, on or before June 1, 1969, and the balance of the consideration would be evidenced by a promissory note, bearing interest at five percent, payable on or before November 1, 1969.

Bullard, Casa Monte Company and the Capital National accepted the Hendrix offer. Hendrix testified that after agreement was reached on price and terms for sale of the ranch, but before draft of the agreement was prepared, Bullard advised Hendrix the sale would be subject to Appellant Foster's right to purchase a portion of "a particular tract containing approximately 160 acres, which Mr. Bullard wanted to set out separately . . . ."

It is clear from the record that the tract Bullard wanted to set out separately was the acreage contained in the Tisinger deed (197.3 acres), less the thirty acres Bullard had already sold to Appellant Foster with frontage on the bluff above Barton Creek. Hendrix testified that Bullard showed him a plat of the land to be set out separately and "told me that it had Barton Creek frontage." Based on his belief that the tract had creek frontage, Hendrix told Bullard that in his judgment the land was worth $3,500 an acre. "In my opinion," Hendrix testified, "any tract of less than a couple hundred acres that had creek frontage anywhere on the ranch would have been approximately $3,500 an acre in that size tract."

Bullard thereafter drafted the contract to provide that the portion of the purchase price allocated to the tract to be set out separately was $492,000. The balance of the ranch, described in two tracts aggregating 2,295 acres, was allocated $1,108,000. The average price allocated to the "164-acre tract" was $3,000 per acre, and the average sum allocated to the remainder of the ranch was $482.79 an acre. The contract was made expressly subject to Appellant Foster's first refusal purchase right by reference to the entire tract of 164 acres, without stating that Foster's right applied to only fifty acres of that tract.

The written contract of sale was executed by the parties on January 13, 1969. Under the same date, Bullard sent a letter by certified mail to Appellant Foster, the body of which read:

"In accordance with a memorandum agreement of July 20, 1967, between Casa Monte Company and Edwin E. Foster, a photo-copy of which agreement is attached hereto, this letter will constitute your ten (10) days notice of my intention to make a sale of land belonging to Casa Monte Company described in the agreement.

Casa Monte Company has contracted to sell 164 acres of land which includes the 50 acres set out in the memorandum agreement at a price of $3,000.00 per acre, 10% cash down and the balance due in cash on or before November 1, 1969, with interest at 5% per annum from June 1, 1969. You are hereby offered the 50 acres mentioned in this agreement at a gross price of $150,000.-00, $15,000.00 cash, and $135,000.00 due on or before November 1, 1969, plus 5% on said deferred amount from June 1, 1969.

This letter is being mailed by Certified mail posted January 13, 1969, and should be in your box on January 14, 1969. If you have not tendered the above offer

on or before January 23, 1969, then this offer shall no longer be in effect."

By affidavit, in opposition to the motions for summary judgment, Appellant Foster stated that no other information reached him which was inconsistent with Bullard's letter, advising that Casa Monte had contracted to sell 164 acres, including the 50 acres, at a price of $3,000 an acre, until September 22, 1969, when he read in an Austin newspaper that:

"Mutual Savings is paying $1.6 million for a 2,500-acre ranch which touches the new West Loop in the hills southwest of town. The seller: Lawyer and mortgage banker Bill Bullard, who left Friday to vacation in Rome and Athens. Mutual has no immediate development plans, but may eventually subdivide . . ."

Hendrix assigned his contract of January 13, 1969, to Mutual Savings Institution on July 25, 1969, and thereafter, prior to closing the sale, the parties agreed to change the due date of the promissory note for the unpaid balance of the consideration from November 1, 1969, to August 28, 1971, and the interest rate was raised from five percent to eight and one-half percent. A perimeter survey of the ranch, made in May of 1969 by B. F. Priest, revealed an area or 2,487.07 acres in the ranch, or 27.-07 acres more than the number of acres named in the contract and the final purchase price paid by Mutual Savings was adjusted for the excess at $650 per acre.

Upon investigation, after reading about the sale to Mutual Savings in a newspaper, Appellant Foster learned from county deed records that Casa Monte Ranch had been sold as a tract containing 2,487.07 acres, all parcels contained in one description, for an undisclosed down payment and a note for $1,455,835, the deed being dated August 28, 1969. Foster later gave notice to Mutual Savings that he desired to exercise his option to buy the fifty acres, and upon Mutual's refusal to recognize the option, Foster filed this lawsuit.

Mutual Savings filed its motion for summary judgment in July of 1971, and the other defendants below thereafter jointly filed their motion for summary judgment. The two motions were based on substantially the same several grounds, except that the motion by Mutual Savings asserted the additional defense that Mutual was a *bona fide* purchaser without notice.

The trial court, by judgment entered in June of 1972, granted both motions and decreed that Appellant Foster, as plaintiff below, take nothing by his suit. The judgment did not specify which theory, or theories, of defense the trial court adopted.

The motion of Mutual Savings set up these general grounds of defense: (1) Description of the fifty acres was insufficient under the statute of frauds; (2) the price of the land as stated in the contract was insufficient under the statute; (3) the preferential right violated the rule against perpetuities; (4) Mutual Savings was a *bona fide* purchaser without notice; (5) Foster was estopped and, (6) was guilty of laches, in failing for more than six months to bring suit after accrual of his right to sue.

We examine first the issue of whether the description of the fifty acres in the refusal option was sufficient to satisfy the statute of frauds.

In the first writing, dated March 1, 1967, the parties agreed that Foster would buy thirty acres ". . . bounded on the East by the West boundary line of the present W. A. Foster property, on the South by the South boundary line of the 197.3 tract of Casa Monte Company (described in the Tisinger deed, in two tracts), and the North boundary line to be established by competent survey to include 30 acres of land; said North boundary to be at right angles to the W. A. Foster boundary. * * * * Seller agrees to give the right of rejection of *additional land immediately North of the land above described to the extent of a total of 80 acres, being the*

*above 30 acres and an additional 50 acres.*" (Emphasis supplied)

After competent survey by Priest, Bullard made and delivered to Foster a deed to the thirty acres, described by metes and bounds, and also described as ". . . *being a portion of that certain 80.00 acre tract of land out of the James Standifer Survey No. 100* in Travis County, Texas, which was conveyed to the First Austin Realty Corporation by deed [the Tisinger deed of 1953] of record in Volume 1317 at Page 134, Deed Records, Travis County, Texas, and *described as Second Tract in said deed* . . ." (Emphasis supplied)

Contemporaneously with closing the sale of the thirty acres in July of 1967, Bullard and Foster reaffirmed the first refusal right to "the 50 acres immediately north of the 30 acres" in a writing describing the parties in their respective roles as grantor and grantee ". . . in a certain warranty deed dated May 24, 1967, conveying 30 acres out of the James Standifer Survey No. 100 in Travis County, Texas, and being recorded in . . ." the deed records, and the parties agreed that, "In connection with *the 50 acres immediately north of the 30 acres, conveyed to Edwin E. Foster,* prior to sale of said 50 acres to any other purchaser upon a bona fide contract and offer . . ." the grantor of the thirty acres would offer the fifty acres to Foster ". . . at a price consistent with said offer, but not less than $750.00 per acre."

■ The statute of frauds does not prescribe a standard for description or designation of land in a deed or contract of sale of land, and what is reasonably necessary to describe or designate the land in such instruments has been and is a matter of judicial construction. Williams v. Ellison, 493 S.W.2d 734, 737 (Tex.Sup.1973). The test established for determining sufficiency of the description of land in contracts to convey land is: "To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." Morrow v. Shotwell, 477 S.W. 2d 538, 539 (Tex.Sup.1972), and other cases cited.

■ In reading together both writings pertaining to Foster's option to buy the "additional 50 acres," we find the land designated as "additional land immediately North of the land above described [the thirty acres] to the extent of a total of 80 acres, being the 30 acres and an additional 50 acres." From this description it is clear that the two pieces of land are adjoining. "Immediately" means in direct connection or relation, and without land intervening. The word is directly opposed to "mediately," which denotes a separation or an intervening space. We also find that the parties intended that Foster would add to his purchase of thirty acres, if the option should be exercised, an additional fifty acres, making in all a tract of eighty acres.

■ In the second writing, reaffirming the earlier agreement, the parties included additional data and means, by reference to other existing writings, by which the land to be conveyed can be identified with reasonable certainty. There the parties referred to the recent deed to the thirty acres, which instrument in turn referred to the Tisinger deed of 1953. The two deeds make clear that the thirty acres Foster bought was the most southern part of an eighty-acre tract which had been described in the Tisinger deed as "Second Tract," and when the deeds are read with the reaffirming memorandum of July, 1967, the additional fifty acres, adjoining the thirty acres on the north, become identified as the balance of the eighty acres out of the Standifer Survey described as "Second Tract" in the Tisinger deed of 1953. Casa Monte Company did not own any land "immediately north of the thirty acres conveyed to Edwin E. Foster" except the fifty acres which constituted the balance of the eighty-acre tract after sale of the thirty acres.

In addition, in the first writing of March, 1967, Bullard made it clear that the east boundary of the thirty acres coincided with the west boundary of the W. A. Foster tract and that the north boundary of the thirty acres would be established by competent survey "at right angles to the W. A. Foster boundary." When Priest surveyed the thirty acres, he also surveyed the eighty acres at Bullard's request, finding a minor discrepancy in total acreage, which in the Tisinger deed was called "80 acres of land, more or less." Priest *found* all four corners of the eighty acres, as established by prior surveys, and in running the east and west lines of the tract, Priest followed existing fences. The only corners Priest *set* were at the northwest and northeast corners of the thirty acres, both set by Priest in the existing fence lines, with the northeast corner set on a bearing and distance from the northwest corner of the Rozier Survey, a corner found by Priest, which was also the northeast corner of the eighty acres out of the Standifer Survey.

We hold that the description of the fifty acres identified the land, intended by the parties to be the subject of the option contract, with reasonable certainty; and that is all the law requires. It has been demonstrated under the facts of this case that a party familiar with the locality could identify the land with reasonable certainty from the description found in the writings and from other existing writings referred to in the option writings, which is enough to make the description sufficient. Gates v. Asher, 154 Tex. 538, 280 S.W.2d 247 (1955); Oswald v. Staton, 421 S.W.2d 174, 176 (Tex.Civ.App. Waco 1967, writ ref. n. r. e.); Rio Vista Independent School District v. Grandview Independent School District, 379 S.W.2d 408, 411 (Tex.Civ. App. Waco 1964, no writ); Lebow v. Weiner, 454 S.W.2d 869, 875 (Tex.Civ.App. Beaumont 1970, writ ref. n. r. e.). Certainty beyond all chance of doubt is not required to make the description sufficient under the statute. Kirby Lumber Corporation v. Lindsey, 455 S.W.2d 733, 740 (Tex. Sup.1970).

■ The description was sufficient for other reasons. By pursuing an inquiry based upon the description and the references to other writings, as found in the option agreement and its subsequent affirmation in writing, the surveyor was able to identify the fifty acres immediately north of the thirty acres to the exclusion of other land. The fifty acres was shown by Priest's survey, to be the balance of the eighty acres, called "Second Tract" in the Tisinger deed, after the thirty acres was cut off the south end of the eighty acres. Maupin v. Chaney, 139 Tex. 426, 163 S.W. 2d 380 (1942).

Resort to extrinsic evidence in this case did not serve the purpose of supplying the location or description of the fifty acres, but merely identified the land with reasonable certainty from the data and means found in the option writings. O'Herin v. Neal, 56 S.W.2d 1105 (Tex.Civ.App. Texarkana 1932, writ ref.); Morrow v. Shotwell, *supra*; Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150, 152 (1945); Miller v. Hodges, 260 S.W. 168, 170 (Tex.Comm. App., opn. adptd. 1924); Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703, 705 (1935).

■ The fact that Priest's survey disclosed that 47.96 acres, instead of fifty acres, remained after the thirty acres were cut off the south end of the eighty acres would not render the description insufficient. The call for acreage in the option contract was only a general description and was not controlling over such description as leads to the location of the "50 acres immediately North" of the thirty acres. Texas Pacific Coal and Oil Company v. Masterson, 160 Tex. 548, 334 S.W.2d 436, 439 (1960); Thompson v. Bracken, 93 S. W.2d 614, 616 (Tex.Civ.App. Dallas 1936, writ ref.); Standefer v. Miller, 182 S.W. 1149, 1152 (Tex.Civ.App. Amarillo 1916, no writ).

■ Since we will remand the cause for trial, we deem it appropriate to consider Appellant Foster's alternative position that if the description of the fifty acres was

not sufficient, appellant should have been permitted to amend his pleadings, if necessary, to seek reformation of the contract to correct the description. Appellant argues that the parties intended the preferential purchase right to apply to the balance of the eighty-acre Second Tract described in the Tisinger deed of 1953, remaining after location and conveyance of the thirty acres cut off the south part of that tract.

Bullard testified in his deposition, when asked how many acres he gave Foster the right of first refusal, "It's very indefinite description, but *we both knew what it was. It was 50 acres as part of an original 80-acre—the rest of an original 80-acre survey.*" (Emphasis supplied)

By separating the "164 acres" from the balance of the ranch and giving notice to Foster that he had a sale on the 164 acres, including the fifty acres, Bullard demonstrated that the fifty acres optioned to Foster would be found in the land described in the Tisinger deed. That the fifty acres could not be in the First Tract of 117.3 acres, but of necessity was in the Second Tract of "80 acres, more or less," is clear, for the option writing designated the fifty acres as "immediately North" of the thirty acres, which was out of the eighty acres, leaving, after sale of the most southerly thirty acres, only the remaining fifty acres as the subject of the option agreement.

We agree with appellant that facts tending to support the right of reformation are in the record. If the parties intended to describe the fifty-acre tract, out of the eighty-acre Second Tract in the Tisinger deed, remaining after conveyance of the south thirty acres, and if the land was not adequately described in the writings, the parties were mutually mistaken in believing that the description was sufficient. Under such facts, either party was entitled to seek reformation of the contract to make the description sufficient. This is the doctrine of Morrow v. Shotwell, *supra.* This Court applied the doctrine of Morrow v. Shotwell

in deciding National Resort Communities, Inc. v. Cain, 479 S.W.2d 341, 349 (Tex. Civ.App. Austin 1972, writ ref. n. r. e.).

■ Appellant did not plead the alternative theory of reformation, but did bring the facts supporting such theory to the attention of the trial court and indicated in motion for new trial his desire to amend his pleadings to assert the theory. It is settled that summary judgment may not be granted properly and should be denied, regardless of defects in pleadings, if the depositions, affidavits, or admissions "disclose facts which show that an amendment to the pleadings of the opposite party will render the position of the moving party insupportable under the substantive law . . . " Under such circumstances, " . . . it cannot be said that the latter has established his right to judgment as a matter of law." Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233, 237 (1956); "Moore" Burger, Inc. v. Phillips Petroleum Company, 492 S.W.2d 934, 936 (Tex.Sup.1972).

■ Appellees contend that the contract right to purchase the fifty acres, as stated in the option writings, did not designate the price sufficiently to satisfy the statute of frauds. The language of the option was that Bullard would offer the "50 acres to Edwin E. Foster *at a price consistent with* . . . [any other offer], but not less than $750 per acre." (Emphasis supplied) We find the term "consistent with" to mean a price not contradictory of, but having agreement with, whatever offer Bullard had on the fifty acres, but not less than $750 per acre. The word consistent stems from the Latin verb *consistere,* meaning to stand still or firm, and "consistent with" is synonymous with "congruent" or "uniform with." We have no difficulty in determining that under the option contract the parties agreed that Foster would pay, if he exercised his option, a price per acre firmly in accord with the price offered by another person, but in any event not less than $750 an acre.

■ The contention of appellees, in their motions for summary judgment and on appeal, that the first refusal purchase right violated the rule against perpetuities is without merit. In general it may be said that a perpetuity is a limitation that takes the subject property out of commerce for a long period of time and works an indirect restraint upon alienation. A more precise definition of a perpetuity has been stated repeatedly by Texas courts. Kettler v. Atkinson, 383 S.W.2d 557, 561 (Tex.Sup. 1964); Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600, 605 (1951), and cases cited.

Under the facts of this case Bullard and his land company were not restrained from free alienation of the fifty acres. Foster's option was not exclusive to him to buy at a fixed price which he could exercise at some remote time beyond the limit of the rule against perpetuities. Foster merely had the prior right to buy the fifty acres at the same price Bullard could get from another buyer when Bullard chose to sell. Foster had only the right to reject or to buy at such time as Bullard was ready to sell. The contract does not fall within the rule against perpetuities. Sibley v. Hill, 331 S.W.2d 227, 229 (Tex.Civ.App. El Paso 1960, no writ); Weber v. Texas Company, 83 F.2d 807 (5th Cir.), cert. den., 299 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413; see also authorities cited in Martin v. Lott, 482 S.W.2d 917 (Tex.Civ.App. Dallas 1972, no writ), fn. 1, p. 920.

■ Mutual Savings contended below, in its motion for summary judgment, and contends on appeal that it was a *bona fide* purchaser for value, with no notice of the shortcomings Appellant Foster assigns to the notice Bullard gave Foster pursuant to the terms of the first refusal purchase rights. Appellant contends that in giving him "a misleading notice of a proposed sale of the property to a third party (Hendrix) and then selling to a fourth party (Mutual) without notice to Foster and on different terms" Bullard, acting for Casa Monte, could *not thereby* extinguish appellant's valuable right of first refusal.

The sale Bullard had under consideration when he wrote Foster in January of 1969 was a trade with Hendrix. This sale never took place. Hendrix assigned his contract with Casa Monte to Mutual Savings late in July. The terms of this purchase contract were modified by subsequent written and oral changes negotiated between Mutual and Bullard, acting for Casa Monte, and the entire ranch was sold to Mutual by deed dated August 28, 1969, without further notice to Foster. The contract assigned to Mutual expressly referred to Foster's preferential purchase right and was made expressly subject to Foster's right of purchase.

Although the right of first refusal to purchase property more frequently appears in leases under a relationship of landlord and tenant, such contracts are not limited to this relationship. The principal difference between the landlord-tenant first refusal agreement and other types is that in the first situation the tenant's possession may afford some character of notice to a third party purchasing the property from the landlord.

Under the facts of this case Mutual Savings had notice of Foster's first refusal rights by virtue of the terms of the Hendrix contract assigned by him to Mutual in July of 1969. In determining whether Foster's first refusal right was still outstanding at that time, Mutual Savings would be expected to examine the first refusal writings and the written notice Bullard sent Foster in January of 1969.

The first refusal contract, as reaffirmed in writing on the occasion of sale of the thirty acres to Foster, provided that " . . . *prior to sale* of said 50 acres to *any other purchaser* upon a bona fide contract and offer, Casa Monte Company shall be *obligated to offer said 50 acres* to Edwin E. Foster at a *price consistent with said offer* . . ." (Emphasis supplied)

Mutual Savings knew of course that no sale had been made to Hendrix, and Mutual knew that as the only purchaser it had

agreed to pay $650 an acre for Casa Monte Ranch, the total consideration to be adjusted after perimeter survey on the basis of $650 an acre. Mutual also knew that the notice Bullard gave Foster in January, that Casa Monte had an offer of $3,000 an acre for "164 acres" which included the fifty acres, had not resulted in a sale of that tract at that price per acre, and that the contract and offer had been modified thereafter with Mutual in the final role of "any other purchaser." Mutual was in position to know that the notice Bullard gave Foster in January in no way described the sale under consideration in July and August and as finally closed late in August.

Mutual took with actual notice of Foster's first refusal purchase rights. To be a *bona fide* purchaser Mutual was obligated to make reasonable inquiry to determine whether Casa Monte had met its obligation under the option contract to offer the fifty acres to Foster at a price consistent with Mutual's offer which resulted in the first and only sale made following the option agreement between Casa Monte and Foster. The notice Bullard gave Foster in January of 1969 constituted no notice of the actual sale made in August, and Foster's failure to act in response to the notice could not and did not extinguish his valuable right of first refusal.

We are not aware of a decision by a Texas court in which this exact question has been resolved, and no Texas case has been brought to our attention by the parties. We agree with appellant that a decision in 1955 by the Supreme Court of Pennsylvania states the rule of law applicable to the facts of this case. L. E. Wallach, Inc. v. Toll et al., 381 Pa. 423, 113 A.2d 258, 260 (1955). There it was held that a first refusal option was not extinguished when a proposed sale to a third party was not closed, and that the purchase rights under the option were continuing property rights that attached to a subsequent proposed sale, giving rise to the duty of the landowner to give notice of the sub-

sequent sale proposal to afford the option holder an opportunity to purchase on the terms of the offer then under consideration.

■ We agree with the holding and the reasoning of the court in *Wallach*. The obligation of Casa Monte to Foster was not discharged with notice to him of a proposed sale to Hendrix, which was not completed, and Foster's failure to act on that notice did not relieve Casa Monte of the duty to notify Foster of Mutual's offer that led to sale of the land several months later. Mutual took the property subject to Foster's rights, and Foster was entitled to an opportunity to buy at the price offered by Mutual, or at $750 an acre, whichever was greater. Gochman v. Draper, 389 S.W.2d 571, 579 (Tex.Civ.App. Austin 1965) rev. on other grounds, 400 S.W.2d 545 (Tex.). Since Mutual Savings did not receive the property as an innocent purchaser, Mutual is not in better position to defend against Foster's suit for specific performance than is Casa Monte as the seller. Burford v. Pounders, 145 Tex. 460, 199 S.W.2d 141, 142 (1947).

■ Appellees contend that Foster was guilty of laches and is now estopped to assert his right of first refusal for failure for more than six months to bring suit after accrual of his right to sue. We overrule the points of error under which this contention is made.

Casa Monte had the burden to offer Foster first refusal and to disclose the price required for Foster to be substituted for Mutual Savings as purchaser of the "50 acres immediately North of the 30 acres." See authorities cited in *Gochman,* 389 S.W.2d 579. The notice Casa Monte gave Foster in connection with the Hendrix proposal was no notice, since the sale was not closed, and no attempt apparently was made by Casa Monte to give Foster the opportunity to exercise his option when the sale finally was made to Mutual Savings about eight months later. The first intimation Foster had that a sale had taken

place was when he read of the transfer in a newspaper. The record discloses diligent and prompt investigation by Foster to ascertain the facts surrounding the sale. Attempts to reach Bullard by telephone and by mail were fruitless, but examination of the public records led Foster to make his demand on Mutual, after which he filed suit.

Appellees had the burden, as an affirmative defense, to prove the essential elements of laches. City of Fort Worth v. Johnson, 388 S.W.2d 400, 403 (Tex.Sup. 1940); Rule 94, Texas Rules of Civil Procedure. Appellees had the burden of proving (1) unreasonable delay and lack of diligence by appellant in asserting his right of first refusal and (2) that their position had been changed, in good faith, as a result of appellant's delay. The record does not disclose that either requirement was met. As soon as Foster was alerted to the fact that the ranch had been sold he initiated a search for the facts, an endeavour in which he was aided not at all by the appellees, and brought suit when Mutual refused to recognize his rights. Casa Monte and Mutual Savings, having closed the sale without notice to Foster, are not in position now to say that their change in position was in good faith or was occasioned solely by Foster's delay in asserting his rights.

Finally, appellees take the position that appellant failed by his pleadings to make sufficient offer to do equity.

It appears from the record that the parties are not in agreement concerning what Mutual Savings paid per acre for the Casa Monte Ranch. Appellant insists that Mutual paid $650 an acre for the ranch, or paid whatever amount bears such ratio to the total purchase price ($1,617,595.50) as the value of the fifty acres bears to the value of the entire 2487.07 acres in the ranch as bought by Mutual in August of 1969. Appellees apparently contend that Foster should have offered to pay $3,000 an acre for the fifty acres in his offer to do equity.

Appellant offered to do equity to Mutual Savings and the other appellees, making them whole in all respects, upon conveyance of the fifty acres to Foster on terms consistent with the court or jury findings as to the true purchase price and terms of the fifty acres. Whatever performance duty is placed on appellant would depend upon determination by a court of what the actual trade was between Casa Monte and Mutual in fact and in law. Appellant has tendered performance on his part of whatever obligation the court shall determine it his duty to perform. We hold that appellant's offer of performance satisfied the equitable rules applicable in specific performance suits. McMillan v. Smith, 363 S.W.2d 437, 442 (Tex.Sup.1962).

We have before us only the issue of whether the motions for summary judgment for appellees were improvidently granted by the trial court. Hinojosa v. Edgerton, 447 S.W.2d 670, 673 (Tex.Sup. 1969).

The judgment of the trial court is reversed and the cause is remanded for trial.

Reversed and remanded.